UNITED STATES of America,
Plaintiff-Appellee,

v.

Samuel GUERRERO–HERRERA,
Defendant-Appellant.

No. 77–1670.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 15, 1978.

Decided Dec. 21, 1978.

James R. Bellmann, Chicago, Ill., for defendant-appellant.

Thomas Anthony Durkin, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before SPRECHER, Circuit Judge, NICHOLS, Judge,* and BAUER, Circuit Judge.

BAUER, Circuit Judge.

The defendant, Samuel Guerrero-Herrera, appeals from his conviction for distribution of heroin, in violation of 21 U.S.C. § 841(a)(1). The appellant raises three issues on appeal: whether the trial court erred in failing to conduct a second hearing on his motion to suppress his confession; whether the trial court erred in denying the motion to suppress his confession; and,

* The Hon. Philip Nichols, Jr., Associate Judge of the United States Court of Claims, is sitting by designation.

whether the evidence, without his confession, was insufficient to support his conviction. We find these contentions to be without merit and accordingly, affirm the conviction for the reasons set forth below.

## I.

The defendant was arrested on April 25, 1975, along with co-defendants Genaro Galindo and Ramon Cavada, in connection with a negotiated sale of heroin to agents of the Drug Enforcement Administration (hereinafter "DEA"). The defendants were transported to the Federal Building in Chicago for processing by DEA agents. After being advised, both in English and in Spanish, of their constitutional rights, Cavada and Herrera gave statements to the agents, admitting their involvement in the distribution of approximately twenty ounces of heroin seized at the scene of the arrest. By this statement, Herrera essentially admitted that he had purchased the twenty ounces of heroin from an unknown individual for $10,000 between the hour of 4:00 and 4:30 p. m. on the date of the arrest. He also stated that defendant Cavada had told him earlier that day that he had a customer for such a quantity and that he would pick it up at Herrera's home. At 5:00 p. m. that afternoon, Cavada picked up the heroin from Herrera. It is this statement which Herrera seeks to suppress by his motion.

On August 19, 1975, a federal grand jury returned a three count indictment against the defendants, in which the third count charged the defendant-appellant with knowingly and intentionally distributing 476.27 grams of a mixture containing heroin.

The case was assigned to the calendar of the late Honorable Richard J. McLaren, Judge of the United States District Court for the Northern District of Illinois, Eastern Division. Among the pre-trial motions filed on behalf of the defendant was a motion to suppress a confession he had allegedly given to agents of the DEA. Judge McLaren conducted a hearing on the motion during November 25 and 26, 1975, and continued the matter generally for oral argu-

ment pending supplementation of the record with a translation of certain documents admitted into evidence at the hearing. On January 22, 1976, Judge McLaren ordered that closing argument in the hearing on the motion to suppress would be by written memoranda, rather than by oral argument. The appellant filed his memorandum on February 2, 1976. However, prior to ruling on the motion to suppress, Judge McLaren died. The case was reassigned to the calendar of the Honorable George N. Leighton.

On March 3, 1976, the case was first called on Judge Leighton's calendar for status and to set a date for trial. At that hearing, the subject of the pending motion to suppress was discussed. The court inquired of both counsel whether it was agreeable that it read the transcript of the original hearing conducted by Judge McLaren on the motion, and to rule on the motion based upon the complete transcript of the hearing. Having so agreed, the court also granted leave to both sides to file additional briefs in support of their respective positions on the motion to suppress.

On April 16, 1976, the defendant filed his second memorandum in support of the motion to suppress. In the second paragraph of the memorandum, the defendant suggested that the court hold another hearing on the motion since the transcript "may be insufficient" to enable the observation of the demeanor and character of the witnesses by the court. The balance of the memorandum was devoted to the substantive arguments for suppressing the confession. On June 17, 1976, the motion to suppress was denied.

After executing a jury waiver, the defendant was tried separately by the court on February 18, 1977. The government's evidence at trial was presented by stipulated facts. Argument was heard on March 4, 1977. On March 11, 1977, the court found the defendant guilty as to Count III of the indictment, and on May 2, 1977, sentenced the defendant to the custody of the Attorney General for three years to be followed by a mandatory three year parole term.

## II.

The appellant first argues that the trial court should have conducted another suppression hearing, and that failure to do so resulted in the denial of due process. The appellant urges that substantial rights of the accused are in issue, and therefore, the case should be remanded for a new hearing on his motion to suppress in order to afford the trier of fact with an opportunity to observe the demeanor and character of the witnesses.

However, the record in this case clearly shows that the appellant agreed to the procedure to be utilized by Judge Leighton in ruling on the motion to suppress. At the first status call on the case after it was assigned to Judge Leighton's calendar, the following colloquy occurred between the court and the attorneys representing the government and the appellant:

Mr. Semmer: Your Honor, this was Judge McLaren's case. It was up, we had a suppression hearing. Judge McLaren asked us to write briefs on the suppression issue. Mr. Spellman [sic] has filed a brief on behalf of his client. Mr. Fitzsimmons has not filed a brief and the Government is waiting until all briefs are filed so it can reply to both defendants' motions.

The Court: Was there a report of the proceedings on the hearing on motion to suppress?

Mr. Semmer: There was a—I don't think it has been transcribed. It was before a Court Reporter.

The Court: I see Mr. Anderson indicating some acquaintance with the—

The Clerk: Yes, a Court Reporter did take the proceedings.

The Court: Has it been transcribed?

The Clerk: It has not been transcribed. No one has asked for it yet.

The Court: That was because Judge McLaren was going to rule.

The Clerk: Right.

The Court: But I didn't hear it so it has to be written up. How many days of the hearing did that take, do you remember?

Mr. Spellman [sic]: I believe it was two days, your Honor.

The Court: Two days?

The Clerk: Two days.

The Court: Roughly how many witnesses, just roughly.

Mr. Semmer: There were about four or five.

The Clerk: Four or five.

The Court: Well, if that is agreeable by the parties that I read the report of proceedings and rule on the legal questions soon, is that it?

Mr. Semmer: That will be fine, your Honor.

The Court: All right. By the way, do we have to let the record show this agreement and understanding?

Mr. Semmer: That is fine, your Honor.

The Court: All right.

Mr. Spellman [sic]: And on behalf of my client.

The Court: Then we will order the report of proceedings written up and I will look at it and I will rule on the motion to suppress.

Mr. Spellman [sic]: Fine. (Tr. 3–5)

The foregoing quotation from the record establishes quite plainly that the defendant affirmatively endorsed the procedure used by Judge Leighton to rule on the motion to suppress the confession.

██ The appellant now contends, for the first time on appeal, that this procedure denied him due process of law. On the record in this case, we find the appellant's contention meritless. First, the defendant stipulated to the procedure utilized by the court in addressing the defendant's motion to suppress. It is a common practice for parties engaged in litigation to stipulate to matters in which there is mutual agreement. Examples of this practice are too numerous to mention, and its rationale too obvious to deserve comment. The appellant is unable to cite any authority for his contention that the stipulation resulted in a denial of due process. Although no specific federal rule of procedure exists governing

this particular situation,[1] we note the rules do provide for stipulated agreements in other instances. See, e. g., Fed.R.Crim.P. 11(e), 15(g), 23(b); Fed.R.App.P. 11, 17, 33, 42. Despite the unique circumstances of this case, in which the judge who presided over the suppression hearing died prior to ruling on the motion to suppress, we find no basis for precluding the stipulation agreed to by the parties as the method for subsequently deciding the motion. Thus, we do not believe the court abused its discretion in so ruling.

Second, the defendant never presented an objection to this procedure. With the exception of an oblique reference in the defendant's second memorandum in support of his motion to suppress, which suggested that it might be more appropriate for the court to conduct a second hearing, the record in this case, which spanned nearly one year to the date of trial, is totally devoid of any formal or otherwise proper objection to the stipulation that the court would review the transcript of the hearing and supporting memorandum before ruling on the motion, rather than conduct a rehearing. As this court noted in *United States v. Kopel*, 552 F.2d 1265, 1274 (7th Cir. 1977):

> We should not, and will not, permit a litigant to sit quietly by observing the commission of what he claims at the appellate level is reversible error unless we are satisfied that the error was obvious, affected the substantial rights of the accused, and if uncorrected would be an affront to the integrity and reputation of judicial proceedings [citation omitted].

The procedure stipulated to in this case did not violate the standards enunciated in *Kopel, supra.* The court's adoption of the procedure cannot be said to constitute error since the defendant's waiver of his claim to a rehearing is implicit in his stipulation, even assuming that the right to such a rehearing exists. Nor can it be said that the procedure adversely affected substantial rights of the defendant and thereby undermined the integrity of the judicial process. The procedure merely set forth a mutually agreed to and rational basis for the court's independent determination as to the merits of the defendant's motion to suppress his confession. In addition to the 178 pages of transcript from the hearing conducted during two consecutive days by the late Judge McLaren, the court also considered the supplemental briefs filed by the parties in support of their respective positions. On the basis of such consideration, and in view of the defendant's stipulation on the record and his subsequent failure to object, we cannot agree with the defendant's contention on appeal that the procedure utilized by the court resulted in a denial of the defendant's due process rights.

### III.

The second issue on appeal is the appellant's contention that the trial court should have suppressed the confession because the defendant was inadequately advised of his constitutional rights and because his statement was elicited as a direct result of mental coercion.

Following his arrest, the defendant was transported to the Federal Building for processing by DEA agents. Before the defendant was interrogated, Agent Castro handed him an advice of rights form printed in Spanish, and asked the defendant to read along as the agent read it out loud to him. The defendant was then asked whether he understood his rights. He responded affirmatively, and then signed a waiver of rights form also printed in the Spanish language. The appellant does not challenge the advice or waiver of rights forms as inadequate under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He concedes being advised of his rights in Spanish, but argues that since he only understands Spanish in a Mexican dialect, the warnings given to him in Spanish with a Cuban dialect were insufficient.

The defendant presented no evidence as to the difference in dialects. However, Agent Castro testified that there are few differences in the Spanish language be-

---

1. Fed.R.Crim.P. 25 deals only with the disability of a judge during trial or disability after verdict or a finding of guilt.

tween the Mexican and Cuban dialects. Further, Mrs. Alicia Haas, to whom the parties stipulated as an expert in the Spanish language, corroborated the testimony that there is very little difference between the two dialects. She also testified that the advice and waiver of rights forms used were written in Spanish with no difference in dialect.

The appellant also argues that his confession resulted from mental coercion by the agents, since he was a relatively young man with no real prior contact with law enforcement officials. The only evidence presented by the defendant in this regard was his testimony that the agents told him he would not go to jail if he cooperated. This testimony was contradicted by DEA Agent Castro, who testified in rebuttal that no promises or threats were made to the defendant prior to obtaining his statement. On the issue of credibility, the defendant's testimony is significant. According to his testimony, this alleged promise was the only event he remembered during the entire process surrounding his arrest. Thus, he testified that he did not recall being given any warnings or making any statement to the agents. However, he did recall signing the statement and being told that he would not go to jail if he cooperated.

■■ It is settled that the burden is on the defendant to establish that the evidence was unlawfully obtained. *United States v. Lyon*, 397 F.2d 505 (7th Cir. 1968). The government's only burden in admitting a confession into evidence is to show by a preponderance of the evidence that the confession was given voluntarily. *Lego v. Twomey*, 404 U.S. 477, 489, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); *United States v. Shelby*, 573 F.2d 971 (7th Cir. 1978). Thus, in deciding the questions of voluntariness in a motion to suppress a confession, the court shall consider the totality of circumstances. *United States v. Reynolds*, 532 F.2d 1150 (7th Cir. 1976). Moreover, this finding shall not be disturbed on appellate review unless the trial court's findings were clearly erroneous. *United States v. Reynolds, supra.*

■ An examination of the record in this case compels the conclusion that the government has met its burden and the defendant has failed to meet his. The government clearly established by a preponderance of the evidence that the defendant was given proper warnings, that the defendant affirmatively acknowledged an understanding of these warnings, and that the defendant's confession was given voluntarily, without threats or promises. This court is convinced that the decision of the district court, denying the defendant's motion to suppress his confession, was proper.

## IV.

Finally, the appellant argues that, without his confession, the government would have been unable to prove his the defendant's guilt beyond a reasonable doubt. However, since we regard the confession as properly admitted, we find it unnecessary to consider this argument.

For the foregoing reasons, the judgment of conviction appealed from is

AFFIRMED.