**F I L E D**
United States Court of Appeals
Tenth Circuit

**JAN 5 1999**

**PATRICK FISHER**
Clerk

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BARBARA COLETTI,

      Plaintiff-Appellant,

v.

      No. 97-8125

CUDD PRESSURE CONTROL,

      Defendant-Appellee.

**Appeal from the United States District Court
for the District of Wyoming
(D.C. No. 96-CV-141-D)**

Walter Urbigkit of Frontier Law Center, Cheyenne, Wyoming, for Plaintiff-Appellant.

Stephen C. Key (Bruce S. Asay, Associated Legal Group, Cheyenne, Wyoming, with him on the brief) of Karger Key, P.C., Irving, Texas, for Defendant-Appellee.

Before **ANDERSON, BRORBY** and **CAMPBELL**,[*] Circuit Judges.

**BRORBY**, Circuit Judge.

---

     [*] The Honorable Tena Campbell, United States District Judge for the District of Utah, sitting by designation.

Plaintiff, Ms. Barbara Coletti, appeals a jury verdict and judgment denying her retaliatory discharge, public policy tort claim against her former employer, Cudd Pressure Control ("Cudd"). Ms. Coletti alleges Cudd fired her for filing a workers' compensation claim. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

Ms. Coletti raises several issues on appeal. First, she contends the trial court's jury instructions improperly defined the Wyoming Workers' Compensation public policy tort claim for retaliatory discharge, and included an improper "presumption" of regularity in the employer's business conduct. Second, she alleges the trial court improperly denied her the opportunity to introduce deposition testimony as substantive evidence because the deponents were present at trial and available to testify. Third, Ms. Coletti claims the trial court improperly dismissed her claims of fraudulent creation of evidence and intentional infliction of emotional distress. Fourth, she asserts the trial court erred by refusing to allow her to present testimony purporting to show Cudd's pattern of retaliatory conduct toward employees who made workers' compensation claims. Finally, Ms. Coletti contends the trial court should have imposed sanctions for Cudd's alleged failure to timely and adequately comply with the court's discovery orders.

## BACKGROUND

Ms. Coletti was formerly an at-will employee working as an administrator for Cudd, an oil and gas well control and specialty services company, in its Rock Springs, Wyoming, office. She also supplemented her income by working as an independent contractor performing janitorial services for the company. On the evening of January 26, 1995, Ms. Coletti injured her back while attempting to close the front gate to Cudd's premises. Ms. Coletti mentioned her back pain to Cudd's district manager, Ralph Studdard, the following morning and later told the safety director, Gene Holt, about her injury; however, she did not seek medical attention or file a workers' compensation claim at that time. Three months later, while receiving medical treatment for an insect bite, Ms. Coletti asked the doctor to examine her back. Even after the visit to the doctor, she still did not apply for workers' compensation benefits.

In the Spring of 1995, Cudd supervisors visited the Rock Springs office in an attempt to cure certain problems the company was having with operations there, particularly with regard to certain aspects of Ms. Colletti's job performance. According to Ms. Starla Bradley, an administrative supervisor with Cudd, she traveled to the company's Rock Springs office to evaluate the state of affairs, observe Ms. Coletti, and help her improve her job performance. After her

visit and review of the situation, Ms. Bradley informed Ms. Coletti she was placing her on a "30-day job improvement period." This meant Ms. Coletti had thirty days to make positive changes in her job performance or be fired. However, during this probationary period, Ms. Coletti's troubles at work continued. Her supervisors repeatedly disciplined her for leaving the office and forwarding phone calls over the lunch hour, and reprimanded her for unexcused absences from work.

Following these events, on May 5, 1995, the district manager, Don Rode, decided to terminate Ms. Coletti's employment. Mr. Rode cited poor job performance and unexcused absences as the basis for her discharge. Coincidentally, on the day she was terminated, Ms. Coletti completed a workers' compensation report for the injury she suffered January 26, 1995. However, Mr. Rode claimed he did not know Ms. Coletti had filed the workers' compensation claim at the time he fired her.

Following her termination, Ms. Coletti filed suit against Cudd alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, retaliatory discharge under Wyoming law, and breach of the implied covenant of good faith and fair dealing. The trial court granted Cudd's initial motion for

summary judgment and dismissed Ms. Coletti's Americans with Disabilities Act and covenant of good faith and fair dealing claims. However, the court subsequently allowed Ms. Coletti to amend her complaint to include allegations of "tortious creation of documents" and intentional infliction of emotional distress. The district court granted Cudd's motion to dismiss the tortious creation of documents claim because the cause of action was not recognized under Wyoming law, but refused to dismiss Ms. Coletti's intentional infliction of emotional distress claim. After trial, however, the district court found insufficient evidence to instruct the jury on intentional infliction of emotional distress, and dismissed the claim. Following deliberation, the jury returned a verdict in favor of Cudd on the sole remaining issue of retaliatory discharge.

## DISCUSSION

1.  Contested Jury Instructions

Ms. Coletti contends the court gave two improper jury instructions. She argues the first instruction created an impermissible presumption of business regularity, and the second instruction misstated the law pertaining to her Wyoming Workers' Compensation retaliatory discharge claim. We disagree with her allegations and conclude neither instruction misled or confused the jury, improperly stated the applicable law, or resulted in prejudice.

It is well settled the admission or exclusion of a particular jury instruction is left to the sound discretion of the trial court. *Harris Mkt. Research v. Marshall Mktg. & Communications, Inc*., 948 F.2d 1518, 1528 (10th Cir.1991). We review the court's refusal to give a particular instruction for abuse of discretion. *United States v. Lee*, 54 F.3d 1534, 1536 (10th Cir.), *cert. denied*, 516 U.S. 895 (1995). When we review a claim of error relating to jury instructions, we read and evaluate the instructions in light of the entire record to determine if they "fairly, adequately and correctly state the governing law and provide the jury with an ample understanding of the applicable principles of law and factual issues confronting them." *United States v. Barrera-Gonzales*, 952 F.2d 1269, 1272 (10th Cir. 1992) (internal quotation marks and citation omitted). We do not decide whether the instructions "are flawless, but whether the jury was misled in any way and whether it had an understanding of the issues and its duty to decide those issues." *Brodie v. General Chemical Corp.*, 112 F.3d 440, 442 (10th Cir. 1997) (internal quotation marks and citation omitted). "[S]o long as the charge as a whole adequately states the law, the refusal to give a particular requested instruction" is not grounds for reversal. *United States v. Suntar Roofing, Inc*., 897 F.2d 469, 473 (10th Cir.1990).

In the first disputed instruction, the district court advised the jury:

Unless and until outweighed by evidence in the case to the contrary, you may find that official duty has been regularly performed; that private transactions have been fair and regular; that the ordinary course of business or employment has been followed; that things have happened according to the ordinary course of nature and the ordinary habits of life; and that the law has been obeyed.

Ms. Coletti argues this instruction created an impermissible presumption not supported by Wyoming law, and was tantamount to a directed verdict on the issue of the regularity of Cudd's business practice.

We disagree with Ms. Coletti's argument. The instruction permits, but does not require the jury to make certain reasonable inferences about the regularity of business practice. Certainly, as Ms. Coletti asserts, the instruction does burden the plaintiff with providing "affirmative disproof" to overcome the initial inference. However, we fail to see how this constitutes reversible error or results in any prejudice, considering the fact the plaintiff has the ultimate burden of persuasion as a matter of law in a retaliatory discharge action anyway – with or without the instruction. At worst, the quoted instruction is an example of over-instructing a jury, but it was not prejudicial error. The instruction did nothing to affect Ms. Coletti's existing evidentiary burden.

We also find Ms. Coletti's arguments regarding whether the instruction creates a "presumption" or an "inference" immaterial, and merely an exercise in

semantics. What is truly important is whether the instruction improperly guided the jury or prejudiced a party. In this case, the instruction does not override or imply superiority to established facts, and it makes ample provision for nullifying the initial inference through countervailing evidence. Since, under the facts of this case, the instruction does not constrain the jury nor create an improper irrebuttable presumption not supported in the law, we find no error.

The second disputed instruction reads:

> In order for the Plaintiff, Barbara Coletti, to prevail on her claim against the Defendant, Cudd Pressure Control, she must prove by a preponderance of the evidence that her decision to file a Workers' Compensation claim was the determining factor in the Defendant's decision to discharge her. Plaintiff need not prove that her decision to file a Workers' Compensation claim was the sole or exclusive motivation for defendant's discharge decision. Her decision to file a Worker's Compensation claim is a determining factor if Plaintiff would not have been discharged except for that decision. [1]

Ms. Coletti claims this instruction fails to include the proper burden shifting analysis as established in *Cardwell v. American Linen Supply*, 843 P.2d 596, 599-600 (Wyo. 1992).

---

[1] The actual instruction is mysteriously absent from the record on appeal, so we quote from Appellee's Brief at 1.

Admittedly, the instruction given does not precisely mirror the framework established in *Cardwell*, and some question exists about whether the trial court should have included the entire burden-shifting litany. What is clear, however, is the instruction covers the critical issues presented for the jury, and *does not misstate the law of the jurisdiction*. *United States v. Scott*, 37 F.3d 1564, 1577 (10th Cir. 1994) (holding the trial court "is not required to give any particular instruction as long as the ones given correctly state the law and adequately cover the issues presented"), *cert. denied*, 513 U.S. 1100, 514 U.S. 1008 (1995). We find the instruction given sufficiently establishes the essence of the question the jury had to decide under Wyoming law – whether Cudd fired Ms. Coletti in retaliation for filing a workers' compensation claim or for a permissible reason. Since the instruction achieved the underlying goal of all jury instructions – to "provide[] the jury with the requisite understanding of the issues ... and the legal standards applicable to those issues" – the question of whether the trial court properly excluded portions of the *Cardwell* burden-shifting recital is of no consequence. *United States v. Nicholson*, 983 F.2d 983, 991 (10th Cir. 1993).

Accordingly, we hold the district court did not abuse its discretion in giving the disputed jury instructions. Neither instruction improperly guided the jury in its deliberations, nor resulted in prejudicial error. *See Mason v.*

-9-

*Oklahoma Turnpike Auth*., 115 F.3d 1442, 1454 (10th Cir. 1997); *Dikeman v. National Educators, Inc.* 81 F.3d 949, 955 (10th Cir. 1996).

2.      Refusal to Allow the Introduction of Deposition Testimony as Substantive Evidence

Before the trial, Ms. Coletti designated certain segments of deposition testimony of Cudd employees which she proposed to introduce in her case in chief as "managing agents'" statements against interest. However, the district court decided not to allow the introduction of the deposition segments because the deponents were ready and available at trial for Ms. Coletti to call and examine as adverse witnesses.

We review the trial court's decision to disallow the deposition testimony for abuse of discretion. *Angelo v. Armstrong World Indus., Inc*., 11 F.3d 957, 962 (10th Cir. 1993). In order to reverse a district court judgment on account of an evidentiary ruling, Ms. Coletti must make a clear showing she suffered prejudice, and the ruling was "inconsistent with substantial justice" or affected her "substantial rights." *See* 28 U.S.C. § 2111; Fed. R. Civ. P. 61; Fed. R. Evid. 103(a). [2]

---

[2] There is some dispute over whether Ms. Coletti properly preserved this issue for appeal. She did not attempt to introduce the depositions at trial or make

The trial judge reasoned:

> If there's a live witness available, ... you [plaintiff's counsel] can
> call that witness as an adverse witness in your case in chief. And if
> you have a deposition of that individual, [and] you want to impeach
> him with a prior inconsistent statement, I'll give you plenty of
> latitude to do that. But out-of-court statements, although they can be
> used for any purpose[,] if they're depositions in which all parties
> have had an opportunity to be present, should never be used in lieu
> of live testimony unless, of course, [opposing counsel] waived it.

Ms. Coletti contends the trial court improperly imposed its preference for live witness testimony and failed to properly apply provisions of the Federal Rules of Civil Procedure which allow the introduction of adverse party deposition testimony as substantive evidence, even when the party is available to testify. Fed. R. Civ. P. 32.

Rule 32 of the Federal Rules of Civil Procedure governs use of depositions in a court proceeding. In order for a party to use a deposition at trial, the court must find the deposition admissible under the rules of evidence and may only admit it against a party who was present or represented at the deposition. Fed. R.

---

an offer of proof when arguing to admit the deposition testimony during pre-trial proceedings. However, because it does not affect our holding, we need not reach these issues. For the purpose of our discussion on this point, we assume without deciding a proper offer was made, and the issue was preserved for appeal. *See Angelo*, 11 F.3d at 962 n.3 (assuming, for the sake of argument, a proper offer of proof was made, even though the record was unclear on the matter).

Civ. P. 32(a). Under Rule 32, a "deposition may be used by any party for the purpose of contradicting or impeaching the testimony of deponent as a witness, or for any other purpose permitted by the Federal Rules of Evidence." Fed. R. Civ. P. 32(a)(1). The Rule also permits an adverse party to use "[t]he deposition of a party or of anyone who at the time of taking the deposition was an officer, director, or managing agent, or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a public or private corporation, partnership or association or governmental agency which is a party" for any purpose. Fed.R.Civ.P. 32(a)(2).[3]

We agree with Ms. Coletti's argument that Rule 32 allows a party to introduce "as a part of his substantive proof, the deposition of his adversary, and it is quite immaterial that the adversary is available to testify at the trial or has testified there." *King & King Enters. v. Champlin Petroleum Co.*, 657 F.2d 1147, 1163-64 (10th Cir. 1981) (internal quotation marks and citation omitted), *cert. denied*, 454 U.S. 1164 (1982). However, the admission of deposition testimony still remains subject to the sound discretion of trial court, *Reeg v. Shaughnessy*, 570 F.2d 309, 316 (10th Cir. 1978), and "[it] has a perfect right to limit the use

---

[3] We assume without deciding Ms. Coletti's designated deponents qualify as managing agents under Fed. R. Civ. P. 32(a)(2).

-12-

of the material if [the deposition] is repetitious or immaterial." *King & King*, 657 F.2d at 1164.

Although the trial judge's comments appear to ignore Rule 32 provisions allowing the introduction of managing agents' deposition testimony, the record does not show any evidence that the court abused its discretion in limiting the use of depositions as substantive evidence, or that Ms. Coletti suffered any prejudice. [4] The trial court expressly stated it would permit her to use the depositions for impeachment purposes, yet she never attempted that strategy. Because Ms. Coletti could have called and questioned each of the witnesses she designated, and then used their depositions to impeach any possible inconsistent testimony, we cannot say the trial court's refusal to allow Ms. Coletti to read the depositions into evidence affected any of her substantive rights. *See King & King*, 657 F.2d at 1165; *Aetna Cas. & Sur. Co. v. Guynes*, 713 F.2d 1187, 1194 (5th Cir. 1983) (holding a district court's refusal to allow a party to read portions

---

[4] Perhaps the reason the trial court ignored Fed. R. Civ. P. 32 is that Ms. Coletti failed to present the rule as justification for introducing the managing agents' testimony. Instead, Plaintiff's counsel repeatedly argued the depositions are admissible as statements against interest by defendant's employees. While the statements by the defendant's employees may qualify for admission as an exception to the hearsay rule under Fed. R. Evid. 804(b)(3), that does not mean the depositions are then automatically available for the Plaintiff to read into evidence in lieu of live testimony.

of an adversary's deposition directly into evidence is harmless error where the substance of the testimony in question is presented to the jury during trial through the testimony and impeachment of witnesses using previous deposition testimony); *Jackson v. Chevron Chem. Co.*, 679 F.2d 463, 466 (5th Cir. 1982) (finding no prejudicial error in the district court's refusal to admit a witness' deposition in lieu of live testimony because the deposition contained no information the witness' live testimony could not provide). [5]

Ms. Coletti explains her decision not to use the designated depositions for any purpose at trial by claiming the court's decision thwarted her entire case strategy because it gave the live witnesses an opportunity to give different answers at trial and prove a "new theory of the case." We find this rationale unpersuasive. If, as Ms. Coletti claims, the witnesses would have changed or fabricated their testimony at trial, plaintiff's counsel could easily have used their recorded deposition testimony to effectively impeach their responses. We see no

---

[5] Ms. Coletti attempts to distinguish *King & King*, arguing the court refused to admit the depositions in that case to avoid needless, repetitious testimony from witnesses who had already been on the stand. However, we find the principles from *King & King* regarding the court's control over deposition testimony every bit as applicable to the present case because the excluded depositions would have been similarly repetitive and unnecessary if Ms. Coletti exercised her power to call the available deponents to the stand.

-14-

reason to reverse the jury verdict merely because Ms. Coletti insists the trial court should have allowed her to utilize her own method of getting her point across, "when another, at least equally effective method of getting that same point across was easily available."  *King & King*, 657 F.2d at 1165 .  Accordingly, we find the district court did not abuse its discretion in refusing to admit depositions in lieu of live witness testimony at trial, and we see no way in which Ms. Coletti suffered any prejudice thereby.

3.     <u>Dismissal of Claims for Fraudulent Creation of Evidence and Intentional Infliction of Emotional Distress</u>

Ms. Coletti contends the trial court erred when it dismissed her claim of fraudulent creation of evidence before trial and declined to instruct the jury on her related claim of intentional infliction of emotional distress. [6] The trial court dismissed the fraudulent creation of evidence claim because it found no precedent for such a claim under Wyoming law.  The intentional infliction of

---

[6] Ms. Coletti analogizes her "fraudulent creation of evidence" claim to a "spoilation of evidence" theory (also referred to as "spoliation," *see* Black's Law Dictionary 1401 (6th ed. 1990)).  Spoliation of evidence encompasses a third party's intentional or negligent destruction or loss of tangible evidence, which impairs a person's ability to prove or defend a prospective civil action.  Ms. Coletti does not argue evidence was destroyed, but that Cudd fraudulently created evidence for its advantage, and that the Wyoming Supreme Court would recognize her proposed cause of action.

emotional distress claim was dismissed after the trial found insufficient evidence of extreme and outrageous conduct to support the claim, and because of the potential for a double recovery with the mental distress factor already considered as part of the retaliatory discharge claim.  We consider these issues in turn.

A.  Dismissal of Fraudulent Creation of Evidence Claim

With regard to the alleged fraudulent creation of evidence, Ms. Coletti argues the trial court had a duty to apply the law of the jurisdiction, and in the event the state law question was unsettled, it should have either predicted what the state's highest court would decide or certify the question to the state's highest court.  On this point, she is correct.  Since the case before the trial court was a diversity action, Wyoming law governs the issues.  Accordingly, the trial court had an obligation to apply Wyoming law or, if Wyoming law is silent, rule as it believed the Wyoming Supreme Court would rule.      *Fields v. Farmers Ins. Co.*, 18 F.3d 831, 834 (10th Cir.1994).     [7]

---

[7]  When confronted with an unsettled question of state law, the law does not require the trial court to certify the question to the state supreme court.  The decision whether to certify a question of state law to the state supreme court is left to the discretion of the district court. *Lehman Brothers v. Schein*, 416 U.S. 386, 391-92 (1974).

The trial court stated as justification for dismissing Ms. Coletti's fraudulent creation of evidence claim against Cudd:

> It is not the business of a federal judge to establish the law or precedent of a jurisdiction....
>
> Having found no case law, no statute in this jurisdiction that would recognize a tortious creation of fraudulent documents claim, the Court declines to allow one in this case and will dismiss this claim.

Although the court made an unfortunate choice of words that insufficiently articulated its duty to predict state law in unsettled areas, we nevertheless find a fair reading of the trial court's ruling, within the context of the entire record, reveals a careful consideration of Wyoming law and an implied determination that the Wyoming Supreme Court has not, and would not, recognize a previously nonexistent fraudulent creation of evidence cause of action.

Our own independent examination of Wyoming law also reveals no legal basis to support either a spoliation of evidence claim or Ms. Coletti's creative new claim for fraudulent creation of evidence. Rather than recognize an independent tort claim for fraudulent creation of evidence (or spoliation of evidence), Wyoming law allows courts to draw an adverse inference against a party responsible for losing or destroying evidence. *See Kieffer v. Weston Land, Inc.*, 90 F.3d 1496, 1500 (10th Cir.1996) (approving the Wyoming district court's

-17-

ruling that plaintiff could admit evidence of defendant's tampering with key evidence, and that jury could accept or reject defendant's explanation); *cf., Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997) (finding no precedent for the evidentiary doctrine of spoliation and ruling that bad faith destruction of a relevant document gives rise only to an inference that production of the evidence would have been unfavorable to the party responsible for the destruction). Ms. Coletti could have shown Cudd dealt improperly with evidence for the purpose of drawing a negative inference, but not to prove an independent cause of action. Accordingly, we find no error in the trial court's decision to dismiss the fraudulent creation of evidence claim.

### B. Intentional Infliction of Emotional Distress

Ms. Coletti also argues the court misapplied *Leithead v. American Colloid Co.*, 721 P.2d 1059 (Wyo. 1986), in refusing to instruct the jury regarding her intentional infliction of emotional distress claim. In *Leithead*, the Wyoming Supreme Court did not allow an intentional infliction of emotional distress claim to accompany a wrongful discharge cause of action, because of the potential for a double recovery. *Leithead*, 721 P.2d at 1066. The potential for double recovery exists because a wrongful discharge cause of action already includes an implied element of mental distress. *Id*. Ms. Coletti contends the rationale from *Leithead*

-18-

does not bar her claim in this instance because the alleged intentional infliction of emotional distress arose from incidents separate and independent from her retaliatory discharge claim. She argues Cudd's intentional infliction of emotional distress pertains to Cudd's conduct after she filed the original suit and involves the company's alleged mishandling of the evidence during discovery.

We are unpersuaded by Ms. Coletti's argument. Even though her claim of intentional infliction of emotional distress may have had an independent basis arising separate from her retaliatory discharge claim, that still does not negate the fact the trial court found no evidence to support the claim. When a court rules as a matter of law that a party introduced insufficient evidence to warrant the jury's consideration of a claim, it is perfectly within the court's discretion to decline to instruct the jury on the matter. *See Aves v. Shah*, 997 F.2d 762, 764-65 (10th Cir. 1993) (ruling that a court could properly exclude negligence theory because the evidence adduced at trial did not warrant instructing the jury on a particular theory); *FDIC v. Clark*, 978 F.2d 1541, 1550 (10th Cir. 1992) (finding the court must only give jury instructions supported by the evidence at trial); *Higgins v. Martin Marietta Corp*., 752 F.2d 492, 496 (10th Cir. 1985) (recognizing principle that a party is only entitled to an instruction to the jury on his theory of the case if competent evidence supports the claim). The court declined to instruct

the jury on intentional infliction of emotional distress, in part, because no "extreme" or "outrageous" conduct had been shown. Implicit in the court's finding is the conclusion that no evidence showing intentional infliction of emotional distress existed with regard to *either* the alleged retaliatory discharge or the independent fraudulent creation of evidence claim. Therefore, we hold the trial court correctly dismissed the claim.

4.      <u>Exclusion of Former Employee and Untimely Designated Witness Testimony</u>

Ms. Coletti contends the trial court improperly excluded the testimony of Mr. Ronald Orr and Mr. James Bresnahan regarding the circumstances of their discharge from employment as inadmissible evidence to show either a pattern or practice of retaliatory discharge or Cudd's improper motive or intent for firing her. The court prohibited Mr. Orr from testifying upon Cudd's objection that the evidence was either irrelevant or unfairly prejudicial. Mr. Bresnahan, on the other hand, was never permitted to take the stand, because his designation as a newly discovered witness was untimely under the provisions of the pre-trial order. For purposes of our discussion, we need not address the timeliness of Mr Bresnahan's designation, because we assume the court would have declined to allow Mr. Bresnahan's testimony – even if he had been timely designated – for substantially the same reasons as it articulated in refusing to allow Mr. Orr to

testify.

We review the district court's decision not to admit the testimony for abuse of discretion. *United States v. Wacker*, 72 F.3d 1453, 1469 (10th Cir. 1995). We will not disturb the court's ruling unless we have "a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *McEwen v. City of Norman*, 926 F.2d 1539, 1553-54 (10th Cir.1991) (internal quotation marks and citation omitted). If we find error in the admission of evidence, "we will set aside a jury verdict only if the error prejudicially affects a substantial right of a party." *Sanjuan v. IBP, Inc.*, ___ F.3d ___, ___, 1998 WL 792457 at *3 (10th Cir. Nov. 16, 1998).

Fed. R. Evid. 404(b) generally excludes evidence of other acts for the purpose of proving a person acted similarly on other occasions. This rule applies to both civil and criminal proceedings, *Carson v. Polley*, 689 F.2d 562, 575 (5th Cir. 1982), and is based on the assumption that such evidence is of slight probative value yet very prejudicial. *Reyes v. Missouri Pac. R. Co.*, 589 F.2d 791, 793 (5th Cir. 1979). We have modified this general rule somewhat in the context of employee discharge cases requiring proof of discriminatory intent. The testimony of other employees about their treatment by the defendant

-21-

employer is relevant to the issue of the employer's discriminatory intent if the testimony establishes a pattern of retaliatory behavior or tends to discredit the employer's assertion of legitimate motives. *Spulak v. K Mart Corp*., 894 F.2d 1150, 1156 (10th Cir. 1990); *Curtis v. Oklahoma City Pub. Schls. Bd. of Educ.*, 147 F.3d 1200, 1217 (10th Cir. 1998). "Because an employer will rarely admit retaliatory motives in firing an employee, retaliatory discharge cases generally must be proven by circumstantial rather than direct evidence." *Sanjuan*, ___ F.3d at ___, 1998 WL 792457 at *3. In order for the court to find such character testimony relevant, however, the plaintiff must show the circumstances involving the other employees are such that their statements can "logically or reasonably be tied to the decision to terminate [the plaintiff]." *Curtis*, 147 F.3d at 1217 (internal quotation marks and citations omitted); *see Schrand v. Federal Pac. Elec. Co.*, 851 F.2d 152, 156 (6th Cir.1988) (holding the trial court committed reversible error by admitting testimony of two former employees of defendant company because of no evidence tied the testimony to defendant's decision to terminate). Additionally, even though such testimony is relevant to show motive or intent, the trial court may still properly disallow relevant evidence it finds unduly prejudicial. Fed. R. Evid. 403; *Curtis*, 147 F.3d at 1217.

The record indicates the trial court expressly considered whether the

testimonial evidence was admissible to show Cudd's intent or a pattern and practice of retaliatory discharge. The court was disturbed, as are we, that Mr. Orr's proposed testimony relates to events that occurred after Ms. Coletti was discharged. Testimony about later events is even less relevant and of less probative value than evidence of prior bad acts generally, because the logical relationship between the circumstances of the character testimony and the employer's decision to terminate is attenuated. The trial court found the evidence of later events unreliable, and excluded it as overly prejudicial. We defer "to the trial court's judgment because of its first-hand ability to view the witness or evidence and assess credibility and probative value," *McEwen,* 926 F.2d at 1554, and find the court did not abuse its discretion in deciding the prejudicial effect of the testimony substantially outweighed its probative value.

5.    Sanctions for Failure to Comply with Discovery Orders

As a final matter, Ms. Coletti seeks a reversal of the trial court's decision denying sanctions for Cudd's alleged violation of discovery orders. Ms. Coletti argues a "deliberate, continuous, repetitive, intentional, and willful violation of explicit [c]ourt [o]rders occurred regarding discovery," and requests sanctions in the form of attorneys' fees for the cost of procuring compliance with the discovery orders. Ms. Coletti alleges Cudd intentionally withheld critical

documents and answers to interrogatories throughout the discovery process, and failed to produce a critical original handwritten memorandum.

As a general rule, "[t]he imposition of sanctions for abuse of discovery under Fed. R. Civ. P. 37 is a matter within the discretion of the trial court." *Orjias v. Stevenson*, 31 F.3d 995, 1005 (10th Cir.), *cert. denied*, 513 U.S. 1000 (1994). A district court abuses its discretion when it renders "an arbitrary, capricious, whimsical, or manifestly unreasonable judgement." *FDIC v. Oldenburg*, 34 F.3d 1529, 1555 (10th Cir.1994) (internal quotation marks and citation omitted). After examining the district court's order denying Ms. Coletti's motion for sanctions, we find no evidence showing the court acted unreasonably. The district court adopted the magistrate judge's finding that sanctions were inappropriate because Cudd did not intentionally withhold the requested discovery document, but was simply unable to locate the material. Since the trial court is obviously in a much better position to assess the need for sanctions than a panel of this court, and the record on its face evidences no willful misconduct, bad faith, or fault by Cudd, we find the district court did not abuse its discretion in denying sanctions for the alleged discovery abuses. *See Melendez v. Illinois Bell Tel. Co.*, 79 F.3d 661, 670-71 (7th Cir. 1996).

## CONCLUSION

Having found no reversible error, we **AFFIRM** the decision of the district court in all respects.