**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 10 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

　　　　Plaintiff-Appellee,

　　v.

BERNARDINO GUEBARA,

　　　　Defendant-Appellant.

No. 98-3282

District of Kansas

(D.C. No. 97-CR-10094)

---

**ORDER AND JUDGMENT** *

---

Before **BRORBY** , **HENRY** , and **LUCERO** , Circuit Judges.

---

Bernardino Guebara pleaded guilty to possession of a firearm by an unlawful user of a controlled substance, in violation of 18 U.S.C. § 922(g)(3), and possession of cocaine, in violation of 21 U.S.C. § 844. He appeals two decisions of the district court: 1) the denial of his motion to set aside the order denying his motion to suppress; and 2) the denial of his motion to withdraw his guilty plea. For the following reasons, we affirm the district court's decisions in all respects.

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## I. BACKGROUND

On July 11, 1997, the Garden City Police Department received information from a concerned citizen describing a vehicle and its occupants leaving a possible burglary. Approximately one hour after the police received this information, Officer Cory Murrison stopped a truck matching the description. While approaching the vehicle, Officer Murrison observed the driver, Mr. Guebara, making furtive movements and therefore ordered him to place his hands outside the window and exit the truck. As he approached the passenger side of the car, Officer Murrison observed a cocked 9mm handgun on the driver's seat. Upon removing the passenger, Gary Wigner, from the truck, Officer Murrison found an open bottle of liquor and a loaded .22 caliber revolver under the passenger seat. As Mr. Guebara performed a variety of sobriety tests, Officer Murrison noticed a baggie of cocaine residue hanging out of Mr. Guebara's pants. A search of Mr. Guebara's person revealed ammunition for the 9mm handgun and other drug paraphernalia.

Mr. Guebara was arrested and charged with possession of crack cocaine with intent to distribute, possession of a firearm in connection with a drug trafficking crime, and unlawful use of a controlled substance while in possession of a firearm and ammunition. See Aplt's App. vol. I, at 36-39 (Superseding

Indictment, Sept. 4, 1997). The case was assigned to United States District Judge Frank G. Theis.

Mr. Guebara moved to suppress the stop of his vehicle and subsequent search of his person. See Aplt's App. vol. I, at 32-35 (Motion to Suppress, Aug. 22, 1997). Judge Theis held a suppression hearing, at which Officer Murrison and Mr. Wigner, the co-defendant, testified. At the suppression hearing, Mr. Guebara was represented by Charles O'Hara. During Mr. O'Hara's cross-examination, Officer Murrison disclosed that there was a civilian rider with Officer Murrison in the police vehicle at the time he stopped Mr. Guebara and Mr. Wigner. See Aplt's App. vol. II, at 276. Mr. Wigner's attorney informed the court that this was the first time he had been made aware of the additional witness to the events leading up to Mr. Guebara's arrest. See id. at 312. Judge Theis ordered the government to disclose the name and address of this witness. See id. at 277, 312-13. Judge Theis then gave Mr. O'Hara ten days to interview the witness and inform the court whether an additional evidentiary hearing was necessary. See Aplt's App. vol. I, at 64. However, Mr. O'Hara took no further action with regards to this witness, and, consequently, Judge Theis denied the motion to suppress. See id. at 64, 77 (Order, Nov. 17, 1997). Subsequent to the ruling, Judge Theis passed away and the case was reassigned to United States District Judge Monti Belot.

On January 7, 1998, Mr. O'Hara filed a motion to withdraw as counsel for Mr. Guebara. See id. at 83-84. On January 12, 1998, attorney Robert A. Levy entered his appearance on Mr. Guebara's behalf. See id. at 85.

On March 9, 1998, Mr. Guebara entered a plea of guilty to both counts of the indictment. See id. at 100-110. On June 1, 1998, at the sentencing hearing, Mr. Guebara expressed to Judge Belot that he was dissatisfied with the representation he had received from his first attorney, Mr. O'Hara, during the suppression hearing. He alleged that Mr. O'Hara neglected to follow up on the witness whose identity the government was required to disclose. See Aplt's Supp. App. to vol. II, at 482-85 (Transcript of Hearing, June 1, 1998). He also suggested that Mr. O'Hara should have called Officer Millirons, a second officer who was present during the arrest, to testify at the suppression hearing. Mr. Guebara added that he was under the impression he was going to get another hearing to call these additional witnesses whose testimony he believed would support granting his motion to suppress. See id. at 483.

The court then suggested that Mr. Guebara petition to withdraw his guilty plea. It continued sentencing to allow him to do so. See id. at 492. Soon thereafter, Mr. Guebara filed a Motion to Set Aside the Judgment Denying Defendant's Motion to Suppress, and a Motion to Rescind the Plea Agreement.

See Aplt's App. vol. I, at 112 (Motion to Set Aside, Jun. 15, 1998); id. at 114 (Motion to Rescind, Jun. 15, 1998).

On July 6, 1998, Judge Belot held a hearing on the motions. See Aplt's App. vol. II, at 353-88 (Transcript of Motion Hearing, July 6, 1998). At the hearing, Mr. Levy argued that Mr. Guebara should be allowed to withdraw his plea and that the suppression hearing should be re-opened to allow Mr. Guebara to present the testimony of an additional witness. See id. Mr. Levy claimed not to have learned the name of the previously undisclosed witness, Manuel Ramirez, until June 12, 1998. See id. at 359. He further explained that, although he had reviewed the transcript of the suppression hearing and, therefore, was aware of an undisclosed witness, he did not know the name of this witness. Thus, Mr. Levy maintained, he had been unable to contact and interview the witness prior to Mr. Guebara's entering a guilty plea. See id. at 359-61. The government countered that Mr. Levy could have determined the identity of the undisclosed witness prior to the guilty plea proceedings by using due diligence. The government added that Mr. Guebara had not demonstrated that Mr. Ramirez's testimony would have changed the ruling on his motion to suppress. See id. at 370. The court orally denied the motion to withdraw the plea and proceeded to sentencing. See id. at 375.

During sentencing, Mr. Guebara again expressed to the court his concern that he did not receive a fair suppression hearing because he was not given the opportunity to present the testimony of Mr. Ramirez and Officer Millirons.     See id. at 375-81.  Acting cautiously, the court decided to re-open the hearing for the limited purpose of allowing Mr. Guebara to present additional witnesses.     See id. at 383-85.  The government was not required to present any additional evidence. See id. at 384.

On August 4, 1998, Mr. Guebara filed an Objection to the Use of the October 6, 1997 Testimony of Officer Cory Murrison.     See Aplt's App. vol. I at 141.  In this objection, Mr. Guebara argued that Judge Belot could not rely on the transcript of Officer Murrison's testimony at the initial suppression hearing before Judge Theis.   See id. at 142.

On August 10, 1998, the court conducted a supplemental suppression hearing.  Mr. Guebara called Officer Millirons, an officer present during the search and seizure who did not testify at the initial suppression hearing.     See Aplt's App. vol. II at 395-422.  Mr. Guebara also testified himself.     See id. at 422-51.  Mr. Ramirez did not testify.  Officer Murrison and Mr. Wigner were not recalled to testify before Judge Belot.  After considering the testimony at the supplemental hearing, and the transcript of the testimony at the initial hearing before Judge Theis, Judge Belot denied Mr. Guebara's motion to set aside Judge

Theis's order denying his motion to suppress. See Aplt's App. vol. I, at 157-70 (Memorandum and Order, Sept. 18, 1998). He also denied Mr. Guebara's motion to withdraw his guilty plea. See id.

## II. DISCUSSION

### A. Denial of the Motion to Set Aside the Order Denying the Motion to Suppress

Mr. Guebara argues that Judge Belot erroneously relied on the transcript of the first suppression hearing and Judge Theis's credibility findings in denying his motion to set aside Judge Theis's order denying his motion to suppress. Mr. Guebara asserts that this error denied him due process. Mr. Guebara further contends, albeit less emphatically, that reassignment of the case to Judge Belot also constituted a due process violation. Both of these arguments raise legal questions that we review de novo. See United States v. Diaz, 189 F.3d 1239, 1243 (10th Cir. 1999); United States v. Nichols, 169 F.3d 1255, 1267 (10th Cir.), cert. denied, 129 S.Ct. 336 (1999).

#### 1. Reliance on the Transcript of the First Suppression Hearing and Judge Theis's Credibility Findings.

Mr. Guebara argues that, although Judge Belot was correct in allowing him to present additional witness testimony in support of his motion to suppress, he erred in relying on the transcript of the first suppression hearing instead of

rehearing all of the testimony. Mr. Guebara contends that due process requires one fact-finder to hear and weigh all of the evidence, whereas here, his second suppression hearing involved two different fact-finders, each hearing only part of the evidence. He maintains that, by relying on Judge Theis' finding that the testimony was credible, the court violated the fundamental rule that "[t]he one who decides must hear . . . ." Aplt's Br. at 6 (quoting United States ex rel Graham v. Marcus, 457 F.2d 463, 469 (2d Cir. 1972)).

Due Process guarantees a meaningful hearing and procedures that sufficiently ensure a reliable determination of the facts underlying a motion to suppress. See Jackson v. Denno, 378 U.S. 368, 376-77 (1964); see also Logan v. Zimmerman Brush Co., 455 U.S. 422, 433-34 (1982); Board of Regents v. Roth, 408 U.S. 564, 570-71 n. 8 (1972). "'One of the most important principles in our judicial system is the deference given to the finder of fact who hears the live testimony of witnesses.'" Moore v. Dubois, 848 F.2d 1115, 1118 (10th Cir. 1988) (quoting Louis v. Blackburn, 630 F.2d 1105, 1109 (5th Cir. 1980)). This deference is based on the fact-finder's "opportunity to judge the credibility of those witnesses." Louis, 630 F.2d at 1107.

In general, "the process due at a suppression hearing may be less demanding and elaborate than the protections accorded the defendant at the trial itself." United States v. Johnson, 977 F.2d 1360, 1366 (10th Cir. 1994) (quoting

-8-

United States v. Raddatz, 447 U.S. 667, 679 (1980)). Constitutional concerns arise, however, where a successor judge relies on a transcript of testimony presented at a suppression hearing, over which he or she did not preside, in order to make an initial ruling on the defendant's motion to suppress. See United States v. Mejia, 69 F.3d 309 (9th Cir. 1995).

In Mejia, Judge Richard A. Gadbois, Jr. heard testimony from the defendant's wife and two detectives at a suppression hearing and then continued the hearing so that the government could present one additional witness. In the meantime, the case was reassigned to Judge Manuel Real. Judge Real set a date for a new suppression hearing, stating initially that he would conduct the hearing from scratch. However, the defense requested a continuance because the two detectives who testified before Judge Gadbois were not available on the scheduled date. Judge Real denied the continuance and decided that he would recall the defendant's wife and listen to the government's new witness, but that he would rely on the transcript of the testimony of the two detectives from the first hearing.

In reviewing Judge Real's denial of the defendant's motion for a continuance, the court concluded that "Mejia was denied the opportunity to present live testimony before any person who acted as a fact-finder, preliminary or otherwise. Judge Gadbois, before whom the detectives did testify, does not qualify: He made no findings of any kind." Id. at 316. The court found error in

-9-

the fact that "Judge Real made a conclusive evaluation of credibility on the basis of the written transcript without hearing live testimony from witnesses whose credibility he was evaluating, and *without the benefit of any credibility findings by the judicial officer who had presided over the taking of the witnesses' testimony* ." Id. (emphasis added).

Here, unlike Mejia, Mr. Guebara received a full and fair hearing before the judicial fact-finder (Judge Theis) who ruled on his motion to suppress. Before Judge Theis issued the ruling, Mr. Guebara had the opportunity to present witnesses and evidence and cross-examine the government's witnesses. When the issue of the undisclosed witness arose, the name of the witness was ordered to be disclosed, and Mr. Guebara was given a fair opportunity to contact the witness and inform the court whether there was a need for a further evidentiary hearing. When the time for notifying the court expired without action, Judge Theis carefully weighed the evidence and explicitly found that Mr. Wigner's testimony at the suppression hearing was "not particularly credible." See Aplt's App. vol. I, at 69.

As stated above, Mr. Guebara received a full and fair suppression hearing, conducted by one neutral fact-finder, Judge Theis, who decided his motion to suppress. As such, Mr. Guebara was not necessarily entitled to a second hearing or even to reconsideration of the denial of his motion to suppress. See United

States v. Wiseman , 172 F.3d 1196, 1207-08 (10th Cir.),     cert. denied , 120 S.Ct.

211 (1999).   Wiseman  points out that in a rare case (i.e., where there is grave

doubt about the fairness of the proceedings) a judge might abuse his discretion in

not re-opening the suppression hearing or reconsidering the ruling denying the

motion to suppress.   See id.   No such grave doubt exists here, and the action the

court took, a partial re-opening of the suppression hearing to evaluate excluded

witness testimony, was clearly within the court's discretion and was a proper

exercise of judicial caution.  Because Judge Theis had already made a ruling on

Mr. Guebara's motion to suppress, which contained specific credibility findings,

Judge Belot's decision to rely on those findings, rather than recall the witnesses

from the first hearing, did not violate due process.

In support of his argument that Judge Belot's reliance on the transcript of

the testimony and Judge Theis's credibility findings violated due process, Mr.

Guebara directs us to three decisions --     United States v. Girolamo   , 23 F.3d 320

(10th Cir. 1994),   United States v. Guerrero-Herrera   , 590 F.2d 238 (7th Cir. 1978),

and United States v. Raddatz   , 447 U.S. 667 (1980).  He notes that in these

decisions, a judge's reliance on a prior judge's findings was based on either a

stipulation of the parties or express statutory authority.  He reads these decisions

as establishing that one of these circumstances must be present in order for

reliance on prior findings to comport with due process. We are not persuaded by his argument.

Girolamo merely holds that the chief circuit judge has the authority to designate a circuit judge to displace an available sitting judge for the purpose of conducting one hearing in a pending case. See 23 F.3d at 323. It does not address a successor judge's reliance on prior findings. Although the Seventh Circuit's decision in Guerrero-Herrera involves the reassignment of a case from one judge to another before the first one had ruled on the motion to suppress, the court's rejection of the defendant's due process argument is based on the fact that the defendant stipulated to the challenged reassignment procedure. See 590 F.2d at 240-41. Contrary to Mr. Guebara's suggestion, there is no indication in Guerrero-Herrera that such a stipulation is required in order to satisfy due process. Finally, the Supreme Court's decision in Raddatz holds that a district judge may rely on the credibility findings of a magistrate. See 447 U.S. at 683-84. Although the court based that conclusion on a statute that authorizes the referral of cases to magistrates, Raddatz does not suggest that a successor judge may only rely on the predecessor judge's findings when a statute expressly authorizes such reliance.

Accordingly, we conclude that because Mr. Guebara had already received a full and fair suppression hearing, Judge Belot did not offend due process by

relying on the transcript of that hearing and the credibility findings of Judge

Theis, in addition to the new testimony, in denying Mr. Guebara's motion to set

aside the order denying his motion to suppress.

2. Judicial Substitution

Mr. Guebara also appears to challenge, albeit less directly, the propriety of

judicial substitution in this case. The assertion that judicial substitution in this

case was somehow illegitimate is unfounded.

First, we cannot possibly entertain, let alone sustain, a challenge to judicial

reassignment where, as here, the judge initially assigned to the case passed away

prior to its resolution. Short of dismissing the case, there was no practicable

alternative to reassigning the case to a different judge.

Second, Mr. Guebara's reliance on Federal Rule of Criminal Procedure

25(a) is unavailing. Rule 25(a) states:

> If by reason of death, sickness or other disability the judge before whom a jury trial has commenced is unable to proceed with the trial, any other judge regularly sitting in or assigned to the court, upon certifying familiarity with the record of the trial, may proceed with and finish the trial.

Mr. Guebara maintains that, because this rule addresses the substitution of judges

only in the specific context of jury trials, "Congress clearly intended not to allow

the substitution of judges in either a pre-trial setting or a bench trial." Aplt's Br.,

at 6-7.

We are not persuaded by Mr. Guebara's interpretation of Rule 25(a). There is nothing in Rule 25(a) to suggest that judicial substitution is only permissible in jury trials, and Mr. Guebara has failed to present any other authority to support this contention. Furthermore, Mr. Guebara's narrowing construction of Rule 25(a) conflicts with federal statute, 28 U.S.C. § 137, which vests the district court with broad power to divide court business among judges. See Diaz, 189 F.3d at 1244 (rejecting the argument that Fed. R. Crim. P. 25 enumerates the only circumstances in which judicial reassignment is permissible because such a construction of Rule 25 conflicts with the broad grant of power to courts under 28 U.S.C. § 137).

Therefore, we reject Mr. Guebara's assertion that judicial substitution was improper in this case.

B. Denial of the Motion to Withdraw the Guilty Plea

Mr. Guebara also alleges that the district court erred in denying his motion to withdraw his guilty plea. Federal Rule of Civil Procedure 32(e) provides that "[i]f a motion to withdraw a plea of guilty. . . is made before sentence is imposed, the court may permit the plea to be withdrawn if the defendant shows any fair and just reason." Fed. R. Civ. P. 32(e). The Tenth Circuit has delineated seven

-14-

factors that courts should weigh in determining whether a defendant has shown a fair and just reason for allowing withdrawal of a guilty plea:

> (1) whether the defendant has asserted innocence; (2) prejudice to the government if the motion is granted; (3) whether the defendant has delayed in filing the motion to withdraw his plea; (4) inconvenience to the court if the motion is granted; (5) the quality of the defendant's assistance of counsel during the plea; (6) whether the plea was knowing and voluntary; and (7) the waste of judicial resources.

United States v. Killingsworth, 117 F.3d 1159, 1162 (10th Cir.), cert denied, 522 U.S. 961 (1997) (citing United States v. Gordon, 4 F.3d 1567 (10th Cir. 1993)). Although motions to withdraw guilty pleas prior to sentencing should be "freely allowed and treated with liberality," Barker v. United States, 579 F.2d 1219, 1223 (10th Cir. 1978), the court's decision is discretionary and consequently we review it for abuse of discretion. See United States v. Guthrie, 64 F.3d 1510, 1513 (10th Cir. 1995).

After reviewing the record we are convinced that the district court carefully weighed the relevant factors, and therefore we conclude that the court did not abuse its discretion in denying Mr. Guebara's motion to withdraw his guilty plea.

In its order, the court stressed that Mr. Guebara's failure to assert his innocence to the offenses to which he pleaded guilty unequivocally favored denial of the motion to withdraw the guilty plea. See Aplt's App. vol. I, at 167 (Memorandum and Order, Sept. 18, 1998). Mr. Guebara clearly admitted that he was guilty of these crimes at his plea hearing, and continued to admit his guilt

-15-

even after he had filed his motion to withdraw his plea.    See Aplt's App. vol. II, at 444-45 (Transcript of Motion Hr'g, Aug. 10, 1998).

The court also noted the government's contention that it would be severely prejudiced if Mr. Guebara was allowed to withdraw his guilty plea because the government's primary witness, Officer Murrison, is no longer employed by the Garden City Police and his whereabouts are presently unknown.    See Aplt's App. vol. I, at 167 (Memorandum and Order, Sept. 18, 1998).

As to delay in filing the motion, the court found that Mr. Guebara had offered no reason for waiting until just prior to sentencing, approximately three months after he had entered his plea, to file the motion to withdraw his plea. Moreover, it is clear from the colloquy at sentencing, that it was the court that initially suggested that Mr. Guebara consider filing a motion to withdraw his plea. See Aplt's Supp. App. to vol. II, at 492 (Transcript of Hr'g, June 1, 1998).

Additionally, the court found that Mr. Guebara's plea was knowing and voluntary and not the result of threat or coercion.  This finding is supported by the plea colloquy, in which Mr. Guebara acknowledged understanding that he did not have to plead guilty and that the decision to plead guilty was his alone.    See Aplt's App. vol. II, at 317-46 (Transcript of Plea of Guilty, Mar. 9, 1998).

Next, the court addressed the quality of the defendant's assistance of counsel during the plea.  The court found that even though Mr. Guebara's counsel

-16-

(Mr. Levy) had not performed "up to the standards of most other defense attorneys who practice in this court," Mr. Guebara had made no showing that, but for his counsel's errors, namely, failing to locate Mr. Ramirez, the alleged key witness, he would have insisted on a trial instead of pleading guilty. <u>See</u> Aplt's App. vol. I, at 168-69 (Memorandum and Order, Sept. 18, 1998).

Finally, although the court believed that allowing Mr. Guebara to withdraw his plea would be an inconvenience to the court, it did not go so far as to say that withdrawal would constitute a waste of judicial resources. <u>See id.</u> at 167-68. The court thus found these factors somewhat neutral as applied to Mr. Guebara.

On balance, the relevant factors weighed in favor of the government and against Mr. Guebara. We therefore conclude that the district court did not abuse its discretion in denying Mr. Guebara's motion to withdraw his guilty plea.

## C. The Decision to re-open the suppression hearing

On a final note, we address the government's contention in its response brief that the court's decision to re-open the suppression hearing to allow Mr. Guebara to present additional witnesses was erroneous. This contention is entirely misplaced in this case.

Although the government's contention is not made within a formal cross-appeal, we point out that to find error here, we would have to conclude that the

-17-

district court's decision to re-open the hearing was an abuse of discretion. See Wiseman, 172 F.3d at 1207-1208. Thus, in essence, the government asserts that court's decision to re-open the hearing was "an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." Coletti v. Cudd Pressure Control, 165 F.3d 767, 777 (10th Cir. 1999) (internal quotations omitted).

Perhaps the government was emboldened by the court's oral rationale for its decision:

> [B]ut I will have another suppression hearing. Not so much because of what you say, but because, frankly, I am never sure what the Court of Appeals will do any more and . . . the interests of justice and my time are not served by going ahead and sentencing you today and then having the Court of Appeals tell me two years from now or longer that I should have given you a hearing on this.

Aplt's App. vol. II, at 384 (Transcript of Motion Hr'g, July 6, 1998).

But, whatever the reason for the court's concern, we support its solution: re-opening the suppression hearing to ensure that evidence which possibly should have been considered in the first hearing was now before the court. As the government concedes in its brief, the decision to allow additional witnesses to testify "was the result of the court's admirable attempt to make certain the defendant's rights were not violated," Aple Br., at 13, and is therefore, hardly "arbitrary, capricious, whimsical, or manifestly unreasonable." Coletti, 165 F.3d at 777. Indeed, the court's care might have resolved any problems caused by the first counsel's failings, if any, to present key testimony at the hearing. The

-18-

district court's actions may have conserved judicial –and governmental– resources with respect to future hearings, and further confirmed the justice of the result. Although such a re-opening may indeed not have been required, it is discouraging to suggest or imply it was an abuse of discretion.


## III.  CONCLUSION

For the foregoing reasons we AFFIRM the district court's denial of the motion to set aside the order denying the motion to suppress.  Additionally, we AFFIRM the court's order denying the motion to withdraw the guilty plea.


Entered for the Court,


Robert H. Henry
United States Circuit Judge