**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 20 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

ESTATE OF JAMES S. BISHOP,
formerly JAMES S. BISHOP d/b/a
Essence of Life,

     Plaintiff-Appellant,

v.

EQUINOX INTERNATIONAL CORP., a
Nevada corporation,

     Defendant-Appellee.

No. 99-5215

(D.C. No. 96-CV-6-E)
(N.D. Okla.)

---

William S. Dorman, Dorman & Gilbert, P.A., Tulsa, Oklahoma, for Plaintiff-Appellant.

Mack J. Morgan III (D. Kent Meyers with him on the brief), Crowe & Dunlevy, Oklahoma City, Oklahoma, for Defendant-Appellee.

---

Before **EBEL**, **BALDOCK**, and **KELLY**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

    This case arises from a trademark dispute between plaintiff-appellant, the Estate of James S. Bishop ("the Estate"), and defendant-appellee, Equinox International Corporation ("Equinox"), over Equinox's infringing use of the federally registered

trademark "Essence of Life." We resolved a prior appeal in this case in Bishop v. Equinox International Corp., 154 F.3d 1220 (10th Cir. 1998) ("Bishop I"), in which we remanded to the district court to determine whether the Estate was entitled to a portion of Equinox's profits during the infringing period. Here, the Estate argues that the district court abused its discretion when it failed on remand to award the Estate a portion of Equinox's profits. The Estate further argues that the district court abused its discretion in failing to grant the Estate's motion for disqualification of the district court judge. Because we find that the district court was acting within its discretionary authority on both issues, we AFFIRM the decision of the district court.

## BACKGROUND

In October 1985, the original plaintiff-appellant, James Bishop ("Bishop"), began making and selling a dietary supplement composed of a mineral electrolyte solution ("liquid mineral complex") in both liquid and capsule form. Bishop affixed the trademark "Essence of Life" to the products' containers and received a Certificate of Federal Trademark Registration, No. 1,504, 568, on September 20, 1988. Bishop then filed and received acceptance of a "Section 8 and 15" Affidavit of Continuing Use under 15 U.S.C. §§ 1058 and 1065.

In approximately January 1995, Bishop became aware that Equinox was marketing a product using the phrase "Essence of Life," which was further described as a "liquid

2

mineral complex." In a letter dated February 22, 1995, Bishop's then-attorney notified Equinox that Bishop considered Equinox's use of the phrase "Essence of Life" an infringement on his trademark and requested that Equinox cease and desist in further infringement. Equinox's attorney responded with a letter dated June 1, 1995, advising Bishop's attorney that Equinox would stop using the phrase "Essence of Life" on its products. Equinox did not, however, stop using the trademark.

Bishop filed suit on January 3, 1996, and the district court conducted a three-day bench trial in 1997. The district court held that Equinox had deliberately or willfully infringed Bishop's trademark and enjoined Equinox from further use of the trademark. The district court also found: (1) Equinox's use of the phrase "Essence of Life" created a likelihood of confusion due to the identical language being used to sell a nearly identical product; (2) Equinox did not cease using the mark as promised by its attorney in the June 1, 1995, letter, at least in part because it perceived Bishop to be without the resources to sue Equinox; and (3) the case was exceptional enough to warrant an award of $100,000 in attorney's fees to Bishop. The district court nevertheless denied Bishop an award of any portion of Equinox's profits on the theory that a plaintiff must demonstrate actual damages before he is entitled to receive a portion of a defendant's profits under 15 U.S.C. § 1117.

Bishop appealed that decision to this court.[1]  We held in Bishop I that the district court erred in requiring Bishop to show actual damages to receive a portion of Equinox's profits.  See 154 F.3d at 1222-23.  We noted that a number of circuit courts of appeals had upheld awards of defendant's profits pursuant to 15 U.S.C. § 1117, even absent proof of actual damage to the plaintiff, under the alternative theories of preventing unjust enrichment or deterring willful infringement.  Id. at 1223.  We thus remanded the case to the district court to determine whether Bishop should be awarded a portion of Equinox's profits as part of the overall damage award in the case, with an instruction that the district court should "fashion a remedy that 'will satisfy the equities of the case.'" Id. at 1224 (quoting Champion Spark Plug Co. v. Sanders, 331 U.S. 125, 131 (1947)).

On remand, the district court ordered the parties to file simultaneous briefs "on the issue of whether, on the evidence now before the Court, and taking into consideration equity and the analyses of the Court of Appeals in this case, the Plaintiff is entitled to profits as an element of damages."  On February 1, 1999, Bishop filed a brief requesting that the district court grant an accounting of Equinox's profits from January 9, 1997, through the end of 1997.  Shortly thereafter Bishop filed a motion for a status conference.

---

[1] Equinox unsuccessfully cross-appealed the district court's award of attorney's fees in favor of Bishop.  See Bishop I, 154 F.3d at 1224.

Bishop soon discovered that Equinox was still advertising products on its website using the "Essence of Life" trademark.[2]  Bishop responded to this discovery by filing a motion for a contempt citation on March 16, 1999.  Bishop then died and the Estate was substituted as the plaintiff in this matter.  Not having heard from the district court, the Estate on June 17, 1999, filed a second motion for a status conference and a motion for additional discovery on the issue of Equinox's profits.  Then, on September 21, 1999, the Estate filed a motion to disqualify Senior Judge James O. Ellison, the district judge to whom the case had been assigned, based upon the delay in scheduling a status hearing and his decision not to allow additional discovery on the issue of Equinox's profits.

On September 22, 1999, Judge Ellison denied the Estate any portion of Equinox's profits, denied the Estate's motions for a status conference and for additional discovery as moot, and denied the Estate's motion for a contempt citation and for Judge Ellison's disqualification.  In denying an award of profits, the district court stated:

> [I]n light of the [Bishop I] Court's reliance on International Star Class Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc., 80 F.3d 749 (2d Cir. 1996), wherein the Court reversed and remanded for additional findings on an award of profits despite a finding of no intentional deception, this Court believes that the task before it is to consider all the equities in the case anew and make a determination on the applicability of an award of profits.
>
> In considering all of the equities in this case, the relative weakness of the mark, the lack of customer confusion or deception, and that Equinox did

---

[2]  The district court had earlier ruled that Equinox would be allowed to market its available supply of products marked with the trademark "Essence of Life Liquid Mineral Complex," but that further marking would not be allowed.

not benefit from Bishop's mark, the court rejects, as it did in the original findings, the notion that prevention of unjust enrichment is a sufficient rationale for awarding profits. In particular, the Court found that Defendant did not benefit from Plaintiff's "relatively obscure" mark. Further, assuming that profits can be awarded in this circuit as a deterrence to willful infringement, the Court finds that when weighing the equities, particularly that the bad faith was found in Defendant's failure to honor the cease and desist agreement, the award of attorney fees is a sufficient deterrent under these circumstances.

Estate of Bishop v. Equinox Int'l Corp., No. 96-C-006-E, slip op. at 4 (N.D. Okla. Sept. 23, 1999) (unpublished order) ("Bishop II").

In regard to the motion to disqualify, the district court noted that his January 5, 1999, Order directed the parties to brief the issue remanded by the Court of Appeals, which belied the Estate's contention that he "was trying to avoid the ruling," and found that neither that nor the court's failure to schedule a status conference "provide a reasonable factual basis for calling the court's impartiality into question." Id., slip op. at 1 n.1.

The instant appeal followed. Subsequent to the filing of this appeal but acknowledged by the Estate at oral argument, Equinox entered into a settlement agreement in an action initiated by the Federal Trade Commission ("FTC") and several states. See Federal Trade Comm'n v. Equinox Int'l Corp., No. CV-S-99-0969-JBR-RLH (D. Nev. Apr. 20, 2000) (unpublished order). The FTC's allegations against Equinox included violations of § 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, and violations of various state statutes dealing with securities, deceptive trade practices, false

6

advertising, pyramid schemes and licensing requirements.  See id., slip op. at 2.  Pursuant

to the settlement agreement, Equinox is no longer in operation and a receiver has been

appointed to liquidate all of Equinox's assets for distribution to its creditors.  See id., slip

op. at 10, 13, 15-20.

## DISCUSSION

### A.  The Damage Award

#### 1.  The Statute

The statute under which damages may be awarded in a trademark infringement

case reads in relevant part:

> When a violation of any right of the registrant of a mark registered in
> the Patent and Trademark Office, or a violation under section 1125(a) of
> this title, shall have been established in any civil action arising under this
> chapter, the plaintiff shall be entitled . . . subject to the principles of equity,
> to recover (1) defendant's profits, (2) any damages sustained by the
> plaintiff, and (3) the costs of the action.  The court shall assess such profits
> and damages or cause the same to be assessed under its direction.  In
> assessing profits the plaintiff shall be required to prove defendant's sales
> only; defendant must prove all elements of cost or deduction claimed. . . .
> The court in exceptional cases may award reasonable attorney's fees to the
> prevailing party.

See 15 U.S.C. § 1117(a) (emphasis added).

7

2. <u>Discretionary Remedy</u>

There are three articulated justifications for awarding a portion of a defendant's profits to an injured plaintiff, only two of which are at issue in this case: prevention of unjust enrichment and deterrence of willful infringement. See <u>Bishop I</u>, 154 F.3d at 1222-23. The third justification, actual damages to the Estate, is not at issue in this case because the record clearly indicates that the Estate suffered no actual damages as a result of Equinox's infringing actions. See <u>Bishop II</u>, slip op. at 2-3.

In regard to the unjust enrichment theory of recovery, we have stated that a plaintiff may recover a portion of a defendant's profits even where the plaintiff was not actually injured by the defendant's unfair use of the disputed trademark. See <u>Bishop I</u>, 154 F.3d at 1223. "The infringer's use of the marketholder's property to make a profit results in unjust enrichment that <u>may</u> properly be remedied through an award of profits, 'even if the defendant and plaintiff are not in direct competition.'" <u>Id.</u> (quoting <u>Maltina Corp. v. Cawy Bottling Co.</u>, 613 F.2d 582, 585 (5th Cir. 1980) (emphasis added)). This is because, as we have previously noted, "the courts have now settled on the theory that a [trademark] infringer is liable as a trustee for profits accruing from his illegal acts, even though the owner of the mark was not doing business in the consuming market where the infringement occurred." <u>Blue Bell Co. v. Frontier Refining Co.</u>, 213 F.2d 354, 363 (10th Cir. 1954).

8

In regard to the deterrence of willful infringement rationale for awarding a portion of a defendant's profits, we have recognized that "several of our sister circuits have recognized that an award of profits may be proper, absent a showing of actual damage, as a deterrent to willful infringement," Bishop I, 154 F.3d at 1223 (citing cases from the Second, Ninth and Eleventh Circuit Courts of Appeals) (emphasis added), and we have implied that we would similarly accept this rationale for awarding profits in a trademark infringement case. See id. at 1223-24.

While we have stated that trademark infringement "may properly be remedied through an award of profits," id. at 1223 (emphasis added), so that unjust enrichment of the defendant may be avoided or so that the defendant will be deterred from future wrongdoing, we have never stated that a plaintiff must necessarily be so compensated whenever a defendant wrongfully appropriates the plaintiff's trademarked property to make a profit. See id. To the contrary, we have emphasized: "An accounting of profits is not automatically granted upon a showing of infringement. Rather, the propriety of such relief is determined by equitable considerations. Consequently, the district court has wide discretion to fashion an appropriate remedy." Id. at 1222 (citations omitted); see also Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1405 (9th Cir. 1993) (stating that an accounting of profits will be granted only in light of equitable considerations).

In short, we have acknowledged that a showing of actual damages is not required to recover a portion of an infringing defendant's profits in a trademark action, and that

9

plaintiffs in such cases may recover the defendants' profits based upon the alternative theories of the prevention of unjust enrichment and the deterrence of willful infringement. We have also instructed the district courts to fashion equitable remedies to meet the individual needs of each case, carefully weighing the equities on both sides of the scale to determine whether, in that district court's judgment and within its wide discretion, the plaintiff may receive a portion of the infringing defendant's profits.

3. Standard of Review

We review a district court's decision whether to award a portion of an infringing defendant's profits to a prevailing plaintiff under an abuse of discretion standard. See Bishop I, 154 F.3d at 1222; BASF Corp. v. Old World Trading Co., 41 F.3d 1081, 1092 (7th Cir. 1994). We have stated:

> Under the abuse of discretion standard[] "a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances. When we apply the 'abuse of discretion' standard, we defer to the trial court's judgment because of its first-hand ability to view the witness or evidence and assess credibility and probative value."

Moothart v. Bell, 21 F.3d 1499, 1504 (10th Cir. 1994) (quoting McEwan v. City of Norman, 926 F.2d 1539, 1553-54 (10th Cir. 1991)) (further quotation omitted). We have further defined an abuse of discretion to be "'an arbitrary, capricious, whimsical, or manifestly unreasonable judgment.'" Coletti v. Cudd Pressure Control, 165 F.3d 767,

10

777 (10th Cir. 1999) (quoting <u>FDIC v. Oldenburg</u>, 34 F.3d 1529, 1555 (10th Cir. 1994)) (further quotation omitted).

4. <u>Analysis</u>

Here, we cannot conclude that the district court abused its "wide discretion" when it weighed the equitable considerations presented in this case and determined both that a full accounting of profits was not necessary and that the Estate was not equitably entitled to a portion of Equinox's profits for its use of the "Essence of Life" trademark.

The record demonstrates that the plaintiff sold an average of only 98 bottles of his product each year. <u>See</u> <u>Bishop I</u>, 154 F.3d at 1222. Further, the district court found that the plaintiff did not lose any sales due to Equinox's infringing use of the trademark, that Equinox did not benefit from any goodwill associated with the disputed trademark, and that there was no actual consumer confusion or deception caused by Equinox's infringing use of the trademark. <u>See</u> <u>Bishop II</u>, slip op. at 3. These factors are relevant not just in demonstrating that the Estate suffered no actual damages, but also in considering whether an award of a portion of Equinox's profits is appropriate either to prevent unjust enrichment or to deter future willful infringement. <u>See</u> <u>Bishop I</u>, 154 F.3d at 1223 ("Notwithstanding the existence of these theories of recovery [of preventing unjust enrichment and deterring willful infringement], we recognize that a finding of actual

11

damage remains an important factor in determining whether an award of profits is appropriate.").

Because the Estate never maintained an active business presence of substantial magnitude or profitability related to the "Essence of Life" trademark, never lost any sales or customer goodwill related to its "Essence of Life" products, and never encountered any customer confusion due to Equinox's infringing use of the mark, it is clear that the Estate suffered no actual injuries related to Equinox's infringement of its trademark. Thus it appears the Estate is simply seeking a windfall based upon the defendant's willful, but in no way damaging (either to the Estate or to the public at large), appropriation of the plaintiff's trademark. While the defendant is undeniably unsympathetic in that it willfully infringed upon the Estate's trademarked property, neither is the Estate itself – which has already received an injunction and an award of $100,000 in attorney's fees – a particularly sympathetic plaintiff.

The district court clearly had this in mind when it determined that the equities of the case were satisfied, and that Equinox was sufficiently deterred from future willful infringement, by the $100,000 attorney's fees award against Equinox:

> In considering all of the equities in this case, the relative weakness of the mark, the lack of customer confusion or deception, and that Equinox did not benefit from Bishop's mark, the court rejects, as it did in the original findings, the notion that prevention of unjust enrichment is a sufficient rationale for awarding profits. In particular, the Court found that Defendant did not benefit from Plaintiff's "relatively obscure" mark. Further, assuming that profits can be awarded in this circuit as a deterrence to willful infringement, the Court finds that when weighing the equities, particularly

12

that the bad faith was found in Defendant's failure to honor the cease and desist agreement, the award of attorney fees is a sufficient deterrent under these circumstances.

Bishop II, slip op. at 4.

In reviewing the district court's determination that an award of profits was not appropriate in this case, we find that the district court carefully weighed the equities and was well within its discretion in finding that the Estate was not entitled to a windfall judgment awarding it a portion of the defendant's profits, and that the $100,000 award of attorney's fees was a sufficient deterrent to any future willful trademark infringement by Equinox. Cf. ALPO Petfoods, Inc. v. Ralston Purina Co., 913 F.2d 958, 969 (D.C. Cir. 1990) ("[T]his court . . . [has] advised a district court to make an award that would deter the defendant, yet not be a windfall to plaintiff nor amount to punitive damages.") (citations, quotations and emphasis omitted), quoted in Bishop I, 154 F.3d at 1223.

The dissent asserts that the district court's failure to conduct discovery on the amount of Equinox's profits during the infringing period meant that the district court did not have all the facts necessary to determine whether an award of profits was appropriate in this case. See post at 4 ("Most troublesome is the district court's refusal to allow discovery to accurately determine the amount of Defendant's profits at issue. Surely, the amount of profits involved is an equity the district court must consider.").

We have in the past found an abuse of discretion where the district court has "fail[ed] to consider the applicable legal standard or the facts upon which the exercise of

13

its discretionary judgment is based." Ohlander v. Larson, 114 F.3d 1531, 1537 (10th Cir. 1997). But we disagree that the district court failed to consider all the relevant facts prior to issuing its opinion. The district court knew when deciding whether to award a portion of Equinox's profits that Equinox had generated total gross profits $16,233,045 for the time period of approximately February 1994 through December 1996. There was no finding as to what portion of these gross profits was attributable to the sale of "Essence of Life" products, but Equinox estimated the net profit attributable to its "Essence of Life" products for the relevant time period at $1,447,878.[3] The district court was thus aware of the extent of both Equinox's gross profits and its estimated net profits for most of the infringement period when it determined that awarding the Estate a portion of those profits was neither necessary nor appropriate in this case. Since the district court already had detailed information regarding Equinox's estimated profits, which were by all accounts considerable and at least partially acknowledged by both parties, we find that the district court's determination that Equinox was sufficiently deterred from future willful infringement by the $100,000 attorney fee award in favor of the Estate was based on sufficient evidence of Equinox's profits, and was by no means "'an arbitrary, capricious, whimsical, or manifestly unreasonable judgment.'" Coletti, 165 F.3d at 777 (quoting

---

[3] The Estate argued to the district court that this number was derived by Equinox through a serious of questionable deductions, and that "Bishop should be entitled to all of Equinox's profits (without deductions) on the sale of its 'Essence of Life' products since the alleged deductions are not properly verifiable."

14

Oldenburg, 34 F.3d at 1555). That decision was well within the district court's discretion, and will not be disturbed on appeal.

Finally, we take judicial notice of the fact that Equinox is now in federal receivership. As such, Equinox is no longer an operating entity and its assets are being liquidated for distribution to Equinox's creditors. Given the practical realities of Equinox's current legal status, we believe remanding this case for further accounting of the profits attributable to Equinox's appropriation of the disputed trademark would be both futile and counterproductive. The district court, when faced with a plaintiff who was not actually injured by Equinox but who nevertheless desired a windfall judgment against the company, already determined that the Estate was not equitably entitled to a portion of Equinox's profits. That determination occurred when the district court believed Equinox was still a viable business entity. That is no longer the case, and it is impossible to believe that the equities would be weighed more favorably to the plaintiff when the district court is asked to weigh the Estate's request for a windfall judgment against the existence of claims filed by Equinox's creditors in the liquidation proceeding. Prolonging this litigation will simply increase Equinox's expenses, which will then be paid indirectly by Equinox's other creditors in the form of decreased disbursements in the liquidation proceeding, and would most likely leave the Estate no better off than it is today.

For these reasons, we hold that the district court did not abuse its discretion when it declined to award the Estate a portion of Equinox's profits.

## B. Motion to Disqualify

The Estate also challenges the denial of its motion to disqualify Judge Ellison. The Estate argues that the judge should have disqualified himself because he harbors a general bias against the remedy of unjust enrichment in trademark infringement cases, as evidenced by his refusal to allow discovery on the question of profits. In addition, the Estate filed several requests and motions between January and September 1999, but the district court ruled on none of them until the day after Plaintiff filed a motion to disqualify, at which point the district court denied them all.

The standard to disqualify a judge is "whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality. . . . In applying the test, the initial inquiry is whether a reasonable factual basis exists for calling the judge's impartiality into question." United States v. Cooley, 1 F.3d 985, 993 (10th Cir. 1993) (quotations omitted). Because the district court made a record of its reasons for denying the Estate's motion, we review the decision for abuse of discretion. Sac & Fox Nation of Okla. v. Cuomo, 193 F.3d 1162, 1168 (10th Cir. 1999).

Courts nationwide have set forth reasons for which disqualification may be necessary under 28 U.S.C. § 455(a), which provides that "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." See 28 U.S.C. § 455(a). "The standard is purely objective. The inquiry is limited to outward manifestations and reasonable

inferences drawn therefrom." Cooley, 1 F.3d at 993. Factors that do not merit disqualification include: rumor, speculation, beliefs, conclusions, or other non-factual matters, see, e.g., United States v. Burger, 964 F.2d 1065, 1070 (10th Cir. 1992); the fact that the judge has previously expressed an opinion on a point of law, see, e.g., Leaman v. Ohio Dep't of Mental Retardation & Developmental Disabilities, 825 F.2d 946, 949 n.1 (6th Cir. 1987); and prior rulings that were adverse to the moving party in this proceeding, or in another proceeding, solely because they were adverse, see, e.g., Green v. Dorrell, 969 F.2d 915, 919 (10th Cir. 1992). In addition, in Sac & Fox we noted that there was no authority for the proposition that the "time and manner of [the judge's] ruling creates a reasonable doubt about impartiality, absent any other indicia of bias or partiality." 193 F.3d at 1168; see also Kennedy v. Meacham, 540 F.2d 1057, 1060 (10th Cir. 1976) (noting that delays attributed to the judge are not sufficient grounds for disqualification.).

Applying these standards, we hold that the district judge did not err in refusing to disqualify himself. The fact that the court had previously ruled against the Estate cannot be viewed, without more, as evidence of bias against the Estate. Accord Green, 969 F.2d at 919. Furthermore, nothing in the district court's rulings in this case, including the timing of the final decision or the delay in scheduling a status conference, provides a reasonable basis from which bias could be inferred. Accord Sac & Fox, 193 F.3d at

17

1168; <u>Kennedy</u>, 540 F.2d at 1060. We therefore find that the district court's denial of the motion to disqualify did not constitute an abuse of discretion.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's decision in regard to both the damage award and the motion to disqualify.

99-5215, <u>Estate of James S. Bishop v. Equinox International Corp.</u>

**BALDOCK, Circuit Judge,** dissenting in part and concurring in part:

The Court's opinion properly emphasizes that district courts have wide discretion in fashioning a remedy for a violation of the Lanham Act. An accounting of profits is not automatic but must be granted in light of equitable considerations. <u>Lindy Pen Co. v. Bic Pen Corp.</u>, 982 F.2d 1400, 1405 (9th Cir. 1993). The district courts, however, must carefully fashion remedies that take <u>all</u> the economic incentive out of deliberate trademark infringement. <u>Playboy Enter., Inc. v. Baccarat Clothing Co.</u>, 692 F.2d 1272, 1275 (9th Cir. 1982). For an infringer to reap the benefits of a trademark it has knowingly and intentionally stolen, and continued to use despite the lawful registrant's objection, and then escape payment of damages because the registrant suffered minimal actual damages hardly seems equitable. <u>Maier Brewing Co. v. Fleischmann Distilling Corp.</u>, 390 F.2d 117, 123 (9th Cir. 1968). Accordingly, I respectfully dissent from Part A of the Court's opinion addressing the damage award in this case. I concur in Part B.

I.

Unjust enrichment is a well-established theory of recovery for trademark infringement in this Circuit. In Bishop I, we explained that "[t]he infringer's use of the markholder's property to make a profit results in unjust enrichment that may

properly be remedied through an award of profits, 'even if the defendant and plaintiff are not in direct competition.'" Bishop, 154 F.3d at 1223 (quoting Maltina Corp. v. Cawy Bottling Co., 613 F.2d 582, 585 (5th Cir. 1980)); see also Blue Bell Co. v. Frontier Refining Co., 213 F.2d 354, 363 (10th Cir. 1954) (an infringement can occur although the owner of the mark was not doing business in the market where the infringement occurred). "'[A] trademark infringer is liable as a trustee for profits accruing from his illegal acts.'" Bishop, 154 F.3d at 1223 (quoting Blue Bell Co., 213 F.2d at 362-63). The dollar amount of the recovery in an accounting for profits under the unjust enrichment rationale bears no relation to the damages, if any, sustained by the plaintiff in the action. Maier Brewing Co., 390 F.2d at 124.

With regard to an award of profits based on the theory of unjust enrichment, the district court rejected "the notion that prevention of unjust enrichment is a sufficient rationale for awarding profits." By itself, this is an incorrect statement of the law. The district court presumably, however, intended this statement to apply only to the circumstances of this case because the district court referred to its findings that Plaintiff's mark is weak, no consumer confusion or deception exists, and Defendant did not benefit from Plaintiff's mark. The district court specifically found that "Defendant did not benefit from Plaintiff's 'relatively obscure' mark." In this case, the district court essentially concluded that because

2

Defendant's actions did not divert sales away from Plaintiff, Defendant was not unjustly enriched. Yet, the diversion of sales is not a requirement in applying an unjust enrichment theory. Bishop, 154 F.3d at 1223.

The Court refers to Plaintiff's request for damages as a "windfall judgment." An award of Defendant's profits cannot be considered a "windfall" when authorized by statute. See 15 U.S.C. § 1117(a). Clearly, if no competition exists between the parties, no diversion of customers and sales can exist. We have previously held, however, that competition is not a prerequisite to recovery of profits. See Bishop, 154 F.3d at 1223; accord Maier Brewing Co., 390 F.2d at 122 ("those courts which treat an accounting solely as a method of compensating for the diversion of customers fail to fully effectuate the policies of the Act"). Defendant has taken Plaintiff's property as represented by his trademark and apparently utilized this property to make a profit. If permitted to retain the profit resulting from the illegal use of Plaintiff's trademark, Defendant is unjustly enriched.

II.

In Bishop I, we also established that deterring willful infringement is an appropriate basis for an award of profits in this Circuit. Bishop, 154 F.3d at 1224. A finding of willfulness or bad faith is a prerequisite to an award of profits based on the deterrence theory of recovery. Id. We noted in Bishop I that "[t]he

3

findings of fact recite that Equinox may have acted with the degree of willfulness necessary for an award of profits." Id. On remand, the district court held that its award of $100,000 in attorney fees was a sufficient deterrent and refused to award profits to Plaintiff.

In its original findings of fact, the district court concluded that Defendant's failure to honor the cease and desist agreement "constituted a trademark infringement which was deliberate or willful."[1] On remand, the district court attempted to mitigate this finding, noting that the bad faith was limited solely to Defendant's failure to honor the agreement. Defendant's actions, however, clearly support a finding of willful infringement especially in light of the district court's additional finding that Defendant premised its decision to continue using Plaintiff's trademark on "the economic weakness of the Plaintiff." Moreover, the district court found that this was an "exceptional case" justifying an award of attorney fees. An "exceptional case" is "one in which the trademark infringement can be characterized as 'malicious, fraudulent, deliberate, or willful.'" Bishop, 154 F.3d at 1224 (quoting VIP Foods, Inc. v. Vulcan Pet, Inc., 675 F.2d 1106, 1107

---

[1] Plaintiff notified Defendant by letter dated February 22, 1995, that Defendant was infringing upon Plaintiff's registered "Essence of Life" trademark. In the letter, Plaintiff requested that Defendant cease and desist from further infringement. Defendant's attorney responded by letter dated June 1, 1995, stating that Defendant would voluntarily refrain from using the name "Essence of Life" on their products. Defendant, however, continued to market products using the phrase "Essence of Life." Plaintiff ultimately filed suit on January 3, 1996.

4

(10th Cir. 1982)).  The record reflects that Defendant's course of conduct constituted a callous disregard for the rights of a trademark owner.  Consequently, I would require that the district court instruct Defendant to make a full accounting before deciding whether an award of profits is an appropriate remedy in this case.

III.

Given the evidence of Defendant's willful infringement of Plaintiff's trademark and Defendant's decision to continue its infringement due to Plaintiff's economic weakness, the district court may have abused its discretion by not awarding some portion of Defendant's profits to Plaintiff.  "[T]he monetary relief must be great enough to further the statute's goal of discouraging trademark infringement but must not be so large as to constitute a penalty."  Sands, Taylor & Wood v. Quaker Oats Co., 34 F.3d 1340, 1349 (7th Cir. 1994).  The Lanham Act, however, specifically states,

> if the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.  Such sum in either of the above circumstances shall constitute compensation and not a penalty.

15 U.S.C. § 1117 (emphasis added).

The district court reasoned that "the award of attorney fees is a sufficient deterrent under these circumstances."  I cannot definitively resolve this question, however, because, in my opinion, the record is not sufficient for us to evaluate

5

properly whether an additional award of profits based on deterrence is appropriate. Although the district court ordered briefing on the issue of Plaintiff's entitlement to profits, the court did not hold an evidentiary hearing to determine the amount of Defendant's profits attributable to the sale of "Essence of Life."

Most troublesome is the district court's refusal to allow discovery to accurately determine the amount of Defendant's profits at issue. Surely, the total amount of profits involved is an equity the district court must consider. See Bishop, 154 F.3d at 1224 (directing the district court to "fashion a remedy that will satisfy the equities of the case"). Although neither party specifically addresses on appeal the amount of profits at issue, the portions of the record available to us seem to indicate that very large sums of money could be at stake.[2] We simply cannot determine the amount of an appropriate award of profits, if any, without specific evidence of Defendant's profits during the entire time of the infringement. Additional discovery is necessary regarding the amount of Defendant's profits for the entire duration of the infringement. Only after considering this additional evidence can the district court properly decide whether an award of profits is appropriate in this case.

---

[2] The record indicates that from 1994 through December 1996, Defendant's gross profits resulting from the sale of "Essence of Life" were over $16 million dollars. In addition, the district court refused to allow further discovery of Defendant's profits for 1997, so those profits presumably are not included in the $16 million dollar figure.

IV.

Finally, I strongly disagree with the Court's reliance on Defendant's current legal status as a basis for its decision. The fact that Defendant is now in receivership should not, to Plaintiff's detriment, insulate Defendant from the consequences of its illegal actions. The Court notes that "[p]rolonging this litigation will simply increase [Defendant's] expenses, which will then be paid indirectly by [Defendant's] other creditors in the form of decreased disbursements . . . ." Our duty, however, is not to protect potential creditors, our duty is to ensure that this case is handled properly from start to finish in accordance with the law. Remanding the case back to the district court may not be "practical," but expedience does not trump ensuring that established rules of law are followed. Defendant's actions were not just "inappropriate," they were willful, deliberate and illegal. Accordingly, I would vacate the district court's order denying an award of profits and remand for further proceedings.