**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 21, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

ROBERT G. WING, Receiver for
VesCor Capital Corporation,

      Plaintiff-Appellee,

v.

BRUCE S. GILLIS, individually and as
trustee of the Bruce S. Gillis MD MPH
Inc. Pension Trust and as trustee of the
Cloud Nine Aviation LLC Retirement
Trust,

      Defendant-Appellant.

Nos. 12-4071 & 12-4121
(D.C. No. 2:09-CV-00314-DB)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, Circuit Judge, **PORFILIO**, Senior Circuit Judge, and
**TYMKOVICH**, Circuit Judge.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Bruce S. Gillis, trustee for the Bruce S. Gillis MD MPH Inc. Pension Trust and the Cloud Nine Aviation LLC Retirement Trust (Trusts),[1] appeals from district court orders granting summary judgment and awarding prejudgment interest to Robert G. Wing, Receiver for VesCor Capital Corporation (Receiver).  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

BACKGROUND

Val Southwick operated VesCor and a complex network of corporations and limited liability companies as a Ponzi scheme.[2]  Together, the Trusts, who were some of the earlier investors in VesCor, purchased over $2.5 million worth of securities from VesCor and received, over time, a return from VesCor of more than $582,000 on their investments.  In August 2006, Dr. Gillis sold the MPH Pension Trust's interest in a VesCor project to Steven Shapiro for $1.24 million (Shapiro Transaction).  Three months later, Mr. Shapiro sued Dr. Gillis and the Trusts and Mr. Southwick in Nevada state court.  In 2011, Mr. Shapiro and Dr. Gillis and the Trusts entered into a settlement, extinguishing all claims Mr. Shapiro had against Dr. Gillis and the Trusts.

---

[1]     Upon stipulation of the parties, the district court dismissed Dr. Gillis, individually, from the litigation.

[2]     "A Ponzi scheme is a fraudulent investment scheme in which 'profits' to investors are not created by the success of the underlying business venture but instead are derived fraudulently from the capital contributions of other investors." *Sender v. Buchanan (In re Hedged-Investments Assocs., Inc.)*, 84 F.3d 1281, 1282 n.1 (10th Cir. 1996).

In the meantime, on February 6, 2008, the United States Securities and Exchange Commission (SEC) filed suit against Mr. Southwick and VesCor alleging violations of securities laws.[3]  On May 5, the district court appointed the Receiver for VesCor.  The Receiver filed many lawsuits against VesCor investors to recover fraudulent transfers in order to distribute money to later investors.  He filed this suit on April 9, 2009, asserting a claim for fraudulent transfers based on payments by VesCor to the Trusts in excess of the amounts invested by them.

The parties filed cross motions for summary judgment.  The district court granted the Receiver's motion and denied the Trusts' motion.  After noting that the Trusts did not challenge the Receiver's assertion that VesCor operated as a Ponzi scheme, the court decided that "the investment returns VesCor paid to the Trusts were fraudulent transfers" and thus the amounts received by the Trusts exceeding their investments must be returned.  Aplt. App. at 70.  Also, the court decided as a matter of law that it had jurisdiction over the Trusts' property located in California, that California law did not exempt the property from execution, and that the Trusts should be treated the same as other VesCor investors.  Lastly, the court decided that MPH Pension Trust was not entitled to offset its liability to the receivership by the amount paid by Mr. Shapiro.  The court's judgment ordered the Trusts to return the

---

[3]     On March 31, 2008, in a separate action in Utah state court, Mr. Southwick pleaded guilty to several counts of securities fraud and was sentenced to prison.

amounts they made to the receivership estate.  MPH Pension Trust was ordered to return $1,788,667.66, and Cloud Nine Trust was ordered to return $33,939.94.

After judgment was entered, the Receiver moved to amend the judgment to include prejudgment interest.  The court awarded interest at 5% beginning February 6, 2008, the date the SEC filed its underlying lawsuit against VesCor.  The court modified its judgment against MPH Pension Trust to $2,330,105.88 and against Cloud Nine Trust to $44,213.72.  The Trusts appeal both the grant of summary judgment and the award of prejudgment interest.

ANALYSIS

I

We review the district court's summary judgment order de novo, and in doing so, we apply the same standard used by the district court.  *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1178 (10th Cir. 2013).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

A

The Trusts admit that legal authority supports the district court's decision to treat them like other investors and to require them to return the amounts they received in excess of their investment.  *See Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008) ("[T]he general rule is that to the extent innocent investors have received payments in excess of the amounts of principal that they originally invested,

- 4 -

those payments are avoidable as fraudulent transfers."); *Scholes v. Lehmann*, 56 F.3d 750, 757-58 (7th Cir. 1995) (same).  But they present various arguments in an attempt to distinguish themselves from other investors.  They argue that the district court erred in not estopping the Receiver from abrogating an October 2004 agreement between VesCor and the Utah Division of Securities requiring VesCor to repay principal and interest to all investors, including the Trusts.  The Trusts maintain that there is no authority requiring early investors, such as themselves, to return money to a receiver for distribution to later investors when the government did not adequately supervise the conduct of the organization engaged in the Ponzi scheme.  Additionally, the Trusts assert that the equities balance in their favor, because the creditors represented by the Receiver knew at least as much about VesCor as the Trusts' beneficiaries knew and because the Trusts paid monies to retiree beneficiaries and any recovery by the Receiver will harm other beneficiaries who are counting on current Trust assets to fund their retirements.

"It is generally recognized that the district court has broad powers and wide discretion to determine relief in an equity receivership." *SEC v. VesCor Capital Corp.*, 599 F.3d 1189, 1194 (10th Cir. 2010) (internal quotation marks and ellipsis omitted).  "The basis for broad deference to the district court's supervisory role in equity receiverships arises out of the fact that most receiverships involve multiple parties and complex transactions," and "a primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for

the benefit of the creditors." *SEC v. Hardy*, 803 F.2d 1034, 1037-38 (9th Cir. 1986). The district court, however, abuses its discretion and is not entitled to deference when its decision is "arbitrary, capricious, whimsical, or manifestly unreasonable." *Estate of Bishop v. Equinox Int'l Corp.*, 256 F.3d 1050, 1055 (10th Cir. 2001) (internal quotation marks omitted).

Upon consideration of the Trusts' arguments, we conclude that the district court did not abuse its discretion in treating the Trusts the same as other VesCor investors. Other investors were covered by the 2004 agreement between VesCor and the Utah Division of Securities, and there is no indication that those investors were treated differently than the district court treated the Trusts. *Cf. VesCor Capital*, 599 F.3d at 1194 (noting district court seeks to equitably distribute assets). Furthermore, there is no indication apart from the Trust's conclusory assertion that the Utah Division of Securities failed to properly supervise VesCor. Nor is there any indication what other investors knew about the VesCor Ponzi scheme. While retirees covered under the Trusts may be adversely affected, we have recognized that not everyone will like an equitable plan. *See VesCor Capital*, 599 F.3d at 1195; s*ee also Donell*, 533 F.3d at 776 ("We are aware that it may create a significant hardship when an innocent investor . . . is informed that he must disgorge profits he earned innocently, often years after the money has been received and spent.").

Accordingly, we conclude that the district court correctly decided that the monies given to the Trusts in excess of their original investments were fraudulent

transfers, and the differences between the original investments and the amounts received must be returned.  *See Donell*, 533 F.3d at 772 (requiring investors to return fictitious profits as fraudulent transfers, when investor receives more than amount invested); *Scholes,* 56 F.3d at 757-58 (reaching similar decision in Ponzi case).

B

Next, the Trusts argue that the district court erred by including the Shapiro Transaction in its calculation of damages.  According to the Trusts, the $1.24 million the MPH Pension Trust received when it sold part of its interests in VesCor to Mr. Shapiro should not be part of the Receiver's calculations because Mr. Shapiro filed a lawsuit against the Trust and Dr. Gillis to recover that money.  Since that case settled, the Trust contends that the Receiver has no standing to raise the issue for Mr. Shapiro and the $1.24 million should not be part of the damages calculation.[4]

---

[4]     The terms of the settlement are not disclosed.  At a hearing on the summary-judgment motion, the Trusts' counsel stated that "money has been paid by the pensions to Steven Shapiro to satisfy claims that were brought in" the Nevada court.  Aplt. App. at 46.  The Trusts' counsel later admitted he did not know the exact amount agreed upon to settle the Nevada lawsuit, but he knew it was not $1.24 million.  *Id*. at 48.  Also, the Receiver's counsel was unaware of the dollar amount paid back to Mr. Shapiro, but counsel understood that the amount was "de minimis." *Id*. at 49.  On appeal, the Receiver indicates that he "is willing to decrease the amount of the receivership's recovery against the Trusts by the amount actually returned to Mr. Shapiro" as part of the settlement.  Aplee. Br. at 12; *see* Aplt. App. at 49 (indicating that if Trusts paid back money to Mr. Shapiro, Receiver would give offset to Trusts and decrease claim Mr. Shapiro has against receivership).  But "the Trusts did not disclose [in the district court] the amount of the settlement, and have not given the Receiver that information since then."  Aplee. Br. at 12.  Nor was the amount disclosed in the Trusts' appellate briefs.

(continued)

Even without the settlement, the Trusts argue that the Shapiro Transaction is not part of this case because it would be subject to double liability through Mr. Shapiro's Nevada lawsuit and this lawsuit.

In considering the Shapiro Transaction, the district court determined as follows:

> MPH . . . reduced the amount of its investment when it assigned part of its investment to Mr. Shapiro in exchange for a payment of $1,240,000.00.  This assignment to Shapiro reduced the amount of MPH's investment, and consequently reduces the amount by which MPH can be deemed to have given reasonable equivalent value in exchange for the payments received.  After assigning the claim to Shapiro, MPH's investment in VesCor (and therefore its offset) is reduced . . . .

Aplt. App. at 74.  In effect, the court treated the $1.24 million as a payment in excess of the Trusts' investment.

We cannot conclude that the district court abused its discretion.  When MPH Pension Trust transferred ownership in part of its investment to Mr. Shapiro, it no longer had the investment and could not use it as an offset against the Receiver's fraudulent transfer claim.  Thus, the $1.24 million effectively was a return on the Trust's original investment, and the district court properly required MPH Pension Trust to return to VesCor the $1.24 million the MPH Pension Trust received from Mr. Shapiro.

The parties dispute whether Dr. Gillis was aware of the Ponzi scheme at the time he sold interests in VesCor to Mr. Shapiro.  *See* Aplt. App. at 46.  The Trusts' counsel indicated that Mr. Southwick entered into a separate transaction with Mr. Shapiro creating liability by VesCor to Mr. Shapiro.  *See id.* at 52.

- 8 -

C

The Trusts argue that the district court erred in finding that their assets were not exempt under Cal. C.C.P. 704.115(b), which provides that assets of qualified retirement plans are exempt from creditors.[5] Like the district court, we disagree with the Trusts' interpretation of this statute. When, as is true here, claims are against the Trusts themselves, not the Trusts' beneficiaries, the statute does not exempt the Trusts' assets from the Receiver's claims. *See In re Rucker (Cunning v. Rucker)*, 570 F.3d 1155, 1160 (9th Cir. 2009) (stating that "purpose of [§ 704.115(b)] exemption is to permit a judgment debtor to place funds beyond the reach of creditors, so long as they qualify for the exemption under the law" (internal quotation marks omitted)). Thus, the district court did not err in refusing to exempt the Trusts' assets from the Receiver's fraudulent transfer claim.

D

Next, the Trusts argue that the district court erred in deciding the Receiver had jurisdiction over their assets located in California. As is required by 28 U.S.C. § 754,[6] the Receiver filed copies of the complaint and the order of appointment of a

---

[5]     Section 704.115(b) provides that "[a]ll amounts held, controlled, or in process of distribution by a private retirement plan, for the payment of benefits as an annuity, pension, retirement allowance, disability payment, or death benefit from a private retirement plan are exempt."

[6]     Section 754 provides:

A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall . . .

(continued)

- 9 -

receiver in the proper California federal district court in order to obtain jurisdiction over the California assets. The Trusts contend, however, that because the California case was closed in March 2010, there is no pending California case or controversy giving the Receiver jurisdiction over the assets. But § 754 does not require a case to be pending in California; it requires only that the complaint and order of appointment be filed in the California court in order for the Utah court to exercise jurisdiction over the assets located in California. Thus, we conclude the district court did not abuse its discretion in deciding it has jurisdiction over the California assets.

## II

The Trusts argue that the district court erred in awarding prejudgment interest because the court made no finding that the Trusts engaged in misconduct. Also, they argue that the court erred in awarding prejudgment interest because VesCor made payments to the Trusts at the direction of the Utah Division of Securities, which allegedly failed to supervise VesCor's and Mr. Southwick's activities as they continued to engage in fraudulent activity. Even if the court properly awarded

> be vested with complete jurisdiction and control of all such property with the right to take possession thereof.
>
> . . . .
>
> Such receiver shall, within ten days after the entry of his order of appointment, file copies of the complaint and such order of appointment in the district court for each district in which property is located. The failure to file such copies in any district shall divest the receiver of jurisdiction and control over all such property in that district.

prejudgment interest, the Trusts contend that the court erred in awarding interest at a rate of 5%, rather than at the post-judgment interest rate set by 28 U.S.C. § 1961. Finally, the Trusts argue that any award of interest should accrue from April 9, 2009, the date the Receiver filed this lawsuit, not from February 6, 2008, the date the SEC filed its underlying lawsuit against VesCor.

We conclude the district court did not abuse its discretion in awarding prejudgment interest. *Morrison Knudsen Corp. v. Ground Improvement Techniques, Inc.*, 532 F.3d 1063, 1073 (10th Cir. 2008) ("An award of prejudgment interest is within the district court's discretion." (internal quotation marks omitted)). Without the award, the Trusts effectively would have benefited from an interest-free loan of the amount in excess of their investments. *See William A. Graham Co. v. Haughey*, 646 F.3d 138, 145 (3d Cir. 2011) ("Requiring only that a losing defendant pay back the principle amount of a wrongfully obtained sum permits him to retain the money's time value as a windfall in the form of an interest-free loan."). In other words, the award of prejudgment interest compensates for the loss of use of the money. *See Donell*, 533 F.3d at 772; *Morrison Knudsen*, 532 F.3d at 1073. Under fairness and equity principles, prejudgment interest was proper. *See Morrison Knudsen*, 532 F.3d at 1075.

Having decided that the district court did not abuse its discretion in awarding prejudgment interest, we next consider whether the court abused its discretion in selecting a 5% rate of interest. *See SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450,

- 11 -

1476 (2d Cir. 1996) (reviewing rate of interest for abuse of discretion). The parties concede that there is no federal statute setting forth an appropriate rate of prejudgment interest. Although the Trusts assert that § 1961 provides the appropriate rate, § 1961 "applies to post-judgment interest, and the district court was not bound by its strictures. Many circuits have held that courts are not required to use section 1961 in calculating prejudgment interest and that the calculation rests firmly within the sound discretion of the trial court." *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1287 (10th Cir. 2002). In this case, the district court chose an interest rate that was mid-way between the interest rates proposed by the parties. Under the circumstances, we cannot say that the district court abused its discretion in selecting a 5% rate of interest.

Lastly, the Trusts also challenge the district court's decision to award prejudgment interest from the date the SEC filed suit against Mr. Southwick and VesCor instead of from the date the Receiver filed this lawsuit. The court could have selected that date, or the court could have awarded prejudgment interest from an earlier date when a transfer was made, s*ee, e.g., Donell*, 533 F.3d at 772. Instead, the court picked a date in the middle of those dates. We defer to the district court's determination and conclude the court did not abuse its discretion in choosing the date the SEC filed suit against VesCor and Mr. Southwick.

CONCLUSION

The judgment of the district court is affirmed.[7]

Entered for the Court

John C. Porfilio
Senior Circuit Judge

---

[7] We remind the Receiver of his duty to cite to the district court record. *See* Fed. R. App. P. 28(b) (referring to Fed. R. App. P. 28(a)(9)(A)), which requires citations to parts of record relied upon).